CLARK, Justice.
hln this direct appeal, the state challenges a judgment issued by an Orleans *858 Parish Criminal District Court judge that declared unconstitutional La. R.S. 14:95.1. This criminal statute prohibits certain felons from possessing a firearm for a number of years after their conviction. In connection with a motion to quash the bill of information filed by the defendant in this case, the district court found the provisions of the criminal statute violate article I, section 11 of the Louisiana Constitution. This state constitutional provision, which was recently amended, proclaims that the right to keep and bear arms is a fundamental right and provides any restriction of that right must be subjected to strict scrutiny. After reviewing the defendant’s claim, and taking into account his status as a probationer at the time of his arrest for the instant offense, we reverse the district court judgment declaring the criminal statute unconstitutional and quashing the charge against the defendant.
FACTS AND PROCEDURAL HISTORY
We begin our recitation of the facts with the defendant’s prior felony conviction, as it bears directly on the scope of our review in this case. The record in Case No. 500-141, Section J of the Orleans Parish Criminal District Court shows that on February 22, 2011, Glen Draughter entered a guilty plea to one count of [^attempted simple burglary.[1] He was sentenced that day to a term of imprisonment of two years at hard labor, suspended, with two years of active probation, and credit for time served.
On April 18, 2012, a little over a year later, Draughter was arrested for the instant offense and charged with being a felon in possession of a firearm, a violation of La. R.S. 14:95.1. La. R.S. 14.95.1 is entitled “Possession of firearm or carrying concealed weapon by a person convicted of certain felonies” and provides:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. Notwithstanding the provisions of R.S. 14:27, whoever is found guilty of attempting to violate the provisions of this Section shall be imprisoned at hard la *859 bor for not more than seven and one-half years and fined not less than five hundred dollars nor more than two thousand five hundred dollars.
C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not |sbeen convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
D. For the purposes of this Section, “firearm” means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.
Based in part on his arrest for the instant offense,[2] Draughter’s probation officer filed an “Affidavit of Probable Cause and Motion for Hearing to Revoke Probation” in the attempted burglary matter. As a probationer, Draughter had been ordered by the judge to refrain from criminal conduct and from owning or possessing a firearm or other dangerous weapon. The probation officer asserted Draughter’s arrest for the instant offense violated both of those conditions of probation.[3] On January 31, 2018, after a hearing, the district judge, revoked Draughter’s probationary sentence for the attempted burglary eon-viction and made the original sentence of February 22, 2011 executory, with credit for time served.
That same day, January 31, 2013, Draughter filed a motion to quash the bill of information for the present charge of being a felon in possession of a firearm. The defendant argued La. R.S. 14:95.1 violated a recent amendment to article I, section 11 of the Louisiana Constitution, regarding a citizen’s right to keep and bear arms. The Office of the Louisiana Attorney General exercised its discretionary right to respond to the constitutional challenge to the statute and joined with the Orleans Parish District Attorney in opposing the defendant’s motion to quash.[4] After holding hearings on the matter, the district court granted |4the defendant’s motion to quash, ruling that La. R.S. 14:95.1 was “facially unconstitutional, in its entirety.” The district court gave these oral reasons for judgment:
Having reviewed the submission by both the State and the Defense, the Court finds that this statute in its entirety does present an unconstitutional infringement on the constitutional guarantee of [the] right to bear arms; does not pass the strict scrutiny standard as required by law; and the State has failed to demonstrate a compelling State interest in order to be able to meet that standard.
The district court also provided written reasons for judgment, concluding the stat *860 ute “was not narrowly tailored to achieve the government’s interest,” as it “applies without discretion to nearly every felony crime enumerated in the Louisiana Criminal Code.”
Pursuant to article V, section 5(D) of the Louisiana Constitution, the matter proceeded directly to this court for review of the district judge’s declaration of the statute’s unconstitutionality.[5] The court has received amicus curiae briefs from the Louisiana Association of Criminal Defense Lawyers on behalf of the defendant, and from the Louisiana District Attorneys Association, The Brady Center to Prevent Gun Violence and the Major Cities Chiefs Association in support of the state.
LAW AND DISCUSSION
This case requires us to determine the constitutionality of a statute. Such questions of law are reviewed by this court de novo. City of Bossier City v. Vernon, 2012-0078, p. 2 (La.10/16/12); 100 So.3d 301, 303.

Background

Before its recent amendment, article I, section 11 provided: “The right of |fieach citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” La. R.S. 14:95.1 has already withstood constitutional scrutiny under this former version of article I, section 11. In State v. Amos, 343 So.2d 166 (La.1977), the defendants were charged with violating La R.S. 14:95.1. They argued in motions to quash that, having completed state supervision for their previous felony convictions, they had been restored their full rights of citizenship under article I, section 20, which provides in pertinent part: “[fjull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.” The district court granted the motions to quash, but this court reversed on direct appeal.
Although the Amos court recognized the defendants had been restored full rights of citizenship prior to their arrest, the court did not accept the defendants’ further contention that, as citizens, any act of the legislature limiting or regulating their right to keep and bear arms unconstitutionally contravened the broad language of former article I, section 11. This court explained:
The right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute. We have recognized that such rights may be regulated in order to protect the public health, safety, morals or general welfare so long as that regulation is a reasonable one.... It is beyond question that the statute challenged in the instant case was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.
Amos, 343 So.2d at 168 (internal citations omitted).
After determining that former article I, section 11 and article I, section 20 of the state constitution were never intended to preclude the type of legislation represent *861 ed by La. R.S. 14:95.1, the court concluded:
We are satisfied that it is reasonable for the legislature in the interest [ Bof public welfare and safety to regulate the possession of firearms for a limited period of time by citizens who have committed certain specified serious felonies.
Amos, 343 So.2d at 168.
We note the defendant’s motion to quash raises a challenge to the constitutionality of La. R.S. 14:95.1 under the state constitution only. Specifically, Draughter claims the fundamental right to bear arms contained in the amended provisions of article I, section 11 of the Louisiana Constitution is impermissibly infringed upon by the criminal statute at issue. Draughter’s motion does not assert a right under the Second Amendment of the United States Constitution, which provides: “A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.”
The Supreme Court recently reviewed the federal constitutional right to bear arms and expounded on the nature and limits of the right secured by the Second Amendment. These Supreme Court decisions appear to have been the catalyst for the recent amendment of the state constitution, so a brief description of their holdings is in order.[6]
In District of Columbia v. Heller, 554 U.S. 570, 595, 128 S.Ct. 2783, 2799, 171 L.Ed.2d 637 (2008), a 5-4 majority of the Supreme Court agreed the Second Amendment “conferred an individual right to keep and bear arms,” not only for the purpose of participation in a citizen militia, as the right was understood by the minority justices, but also for law-abiding, responsible citizens to use arms in defense of hearth and home. Id., 554 U.S. at 635, 128 S.Ct. at 2821. So finding, the Supreme Court invalidated the District of Columbia’s total ban on the possession of handguns and also ruled that the District’s requirement that citizens keep their firearms inoperative “[made] it impossible for citizens to use [firearms] |7for the core lawful purpose of self-defense.” Id., 554 U.S. at 630, 128 S.Ct. at 2818. Two years later, in McDonald v. City of Chicago, — U.S.-, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), the Supreme Court, again by a 5-4 vote, held the Second Amendment’s individual right to bear arms, recognized in Heller, is a right fundamental to our scheme of ordered liberty and fully applicable to the states through the Due Process Clause of the Fourteenth Amendment. McDonald, 130 S.Ct. at 3050.
The slim majority supporting the holdings in Heller and McDonald prompted Louisiana legislators to introduce legislation which ultimately resulted in the amendment of the state constitution. The legislators’ stated intention in introducing this legislation was to secure a continued individual right to bear arms by Louisiana citizens under the Louisiana Constitution, protected from possible future judicial or legislative erosion.
Pursuant to Acts 2012, No. 874, § 1, a proposal to amend article I, section 11 was submitted to the electors of the state of Louisiana, and was ratified by them in a statewide election held on November 6, 2012. This section of the state constitution now provides: “The right of each citizen to keep and bear arms is fundamental and *862 shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.”
The effective date of a constitutional provision or amendment is determined in accordance with the provisions of article XIII, section 1(C) of the Louisiana Constitution. Article XIII, section 1(C) provides in part: “If a majority of the electors voting on the proposed amendment approve it, the governor shall proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation.... ” The governor proclaimed the adoption of the amendment by Act 874 on November 19, 2012. See La. Const. art. I, § 11, “Historical Notes.” The twentieth day thereafter, and the effective date of this | ^constitutional amendment is therefore December 10, 2012.
We are asked to determine the applicability and the effect of the amended provisions of the state constitution to this case. Under the facts presented, we must also decide whether, and to what extent, this defendant had the right to assert a constitutional right to bear arms.

Applicability of Amendment

In brief to this court, the attorney general asserts for the first time that the law in effect on the date the crime was committed applies. Therefore, because Draughter committed the instant offense on April 18, 2012, and the amendment to the state constitutional article did not take effect until December 10, 2012, the attorney general contends Draughter’s case should be evaluated under the former provisions of article I, section 11. If the attorney general’s argument is correct, this court’s ruling in Amos would apply.[7] Whether the former or present constitutional article controls our analysis in this case dictates the type of evaluation the court should apply to the constitutional infringement alleged.
Under the present language of article I, section 11, an alleged infringement on the right to bear arms is subject to strict scrutiny. “Under strict scrutiny the government bears the burden of proving the constitutionality of the regulation by showing (1) that the regulation serves a compelling governmental interest, and (2) that the regulation is narrowly tailored to serve that compelling interest.” In re Warner, 2005-1303, p. 37 (La.4/17/09); 21 So.3d 218, 246.
By contrast, in Amos, the court found the defendant’s right to keep and bear arms “... may be regulated in order to protect the public health, safety, morals or general welfare so long as that regulation is a reasonable one.” Id., 343 So.2d at 168 (emphasis added). At the time Amos was decided in 1977, this reasonableness J^standard was consistent with this court’s review of other alleged infringements of constitutional rights.[8] It might be said *863 this standard of reasonableness was the highest standard of review the court accorded to an alleged infringement of a constitutional right for that time. However, the evaluation is significantly different from the strict scrutiny now required by the present form of article I, section 11, as that level of analysis is understood today.
The defense argues the state waived this argument by not raising it in the district court. We note the defense correctly asserts the rule that arguments not raised in the lower courts are considered waived. See Prest v. Louisiana Citizens Property Ins. Corp., 2012-0513, p. 11 (La.12/4/12); 125 So.3d 1079, 2012 WL 6015594. In this case, however, the state’s possible waiver of this issue is subsumed by the requirement that we consider de novo the proper meaning of La. R.S. 14:95.1 in the context of the facts before us. This case cannot be decided without determining which version of the state constitutional provision controls here. Accordingly, our conclusion of the proper interpretation of La. R.S. 14:95.1 will necessarily include a determination whether the former or present version of article I, section 11 applies.
110Louisiana follows the general rule that a constitutional provision or amendment has prospective effect only, unless a contrary intention is clearly expressed therein. State v. Cousan, 1994-2503, p. 17 (La.11/25/96); 684 So.2d 382, 392-393. All of the parties concede there was no express intent by the legislature that the amendment at issue be retroactive.[9] We agree. The amended constitutional provision is silent as to retroactive application, as is the language used on the official ballot. The official ballot contained a proposition which the electors of the state could accept or reject. The proposition asked:
Do you support an amendment to the Constitution of the State of Louisiana to provide that the right to keep and bear arms is a fundamental right and any restriction of that right requires the highest standard of review by a court? (Amends Article I, Section 11)
See Acts 2012, No. 874, § 3. The proposition on the official ballot did not specify the standard of review as “strict scrutiny,” but specified only that the infringement of this constitutional right must be accorded the highest level of review.
From this, we conclude the right to bear arms was always fundamental; the amendment to the constitutional provision merely sought to ensure that the review standard of an alleged infringement of this fundamental right was in keeping with the refinements made to constitutional analysis which developed since our decision in Amos. See Hondroulis v. Schuhmacher, 553 So.2d 398, 415 (La.1988) (government *864 action imposing a burden on a fundamental right may be justified only by a compelling state interest, narrowly confined so as to further that compelling interest, i.e. strict scrutiny); see also Carey v. Population Services Intern., 431 U.S. 678, 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977) (same).
We note the language of the amendment itself and the official ballot proposition is in the present tense. Finding no clearly expressed contrary intention, we hold the amendment to article I, section 11 has prospective effect from its Ineffective date of December 10, 2012.
This determination does not end our inquiry in this matter, however. Although the amendment to article I, section 11 became effective after Draughter allegedly committed the offense at issue, his criminal case was still pending at the time the amendment became effective. In Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), the Supreme Court held “that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a ‘clear break’ with the past.” This court has endorsed Griffith as a matter of state law for review of non-final convictions still subject to direct appellate review. See State ex rel. Taylor v. Whitley, 606 So.2d 1292, 1296 (La.1992). Accordingly, we find the amendment to article I, section 11 has prospective effect from its effective date of December 10, 2012, and has retroactive effect to this case and all cases pending on direct review or not yet final. Thus, our analysis of La. R.S. 14:95.1 under the present facts will proceed under strict scrutiny, the standard of review provided in the amended constitutional provision.

Scope of Review

Our review of the record in anticipation of oral argument revealed an issue with important implications to the scope of our analysis. Considering the temporal proximity of Draughter’s felony conviction for attempted burglary, for which he received a two-year sentence, with his arrest for a violation of La. R.S. 14:95.1, approximately a year later, we questioned whether Draughter was still under the state’s custody or supervision at the time of his arrest for the instant offense. As this issue was apparently unnoticed by the district court and was not raised by any party, we requested supplemental briefing to determine the threshold concern whether Draughter has standing to assert the protections of the amended | ^constitutional provision in his motion to quash. See Howard v. Administrators of Tulane Educ. Fund, 2007-2224, p. 7 (La.7/1/08); 986 So.2d 47, 54 (an appellate court may raise the issue of standing on its own motion).
The supplemental briefs show that, while they agree on little else, the state and the defendant view the standing issue as no impediment to this court’s determination of the constitutionality of La. R.S. 14:95.1. The state and the defendant both contend the defendant, simply by virtue of facing criminal prosecution for a major felony offense, has standing to raise the constitutionality of his present charge.
Additionally, Draughter states he was released from the custody of the penitentiary in connection with the attempted burglary conviction on February 27, 2013, as the result of good time credits. He argues the terms of his probation for his attempted burglary conviction were, therefore, satisfied at the time the district court ruled upon his motion to quash. He remains in the physical custody of the Criminal Sheriff in Orleans Parish because he *865 cannot make bond on his present charge. Draughter more broadly suggests the constitutionality of all probationary restrictions on firearm possession have been thrown into doubt by the amendment to article I, section 11. See La.C.Cr.P. art. 895(A)(6).[10] Finally, the defendant argues he raised both facial and as-applied challenges to La. R.S. 14:95.1, so any standing issue that would relate to the facial challenge would not be dispositive of his as-applied challenge.
In State v. Mercadel, 2003-3015 (La.5/25/04); 874 So.2d 829, the court set forth the general principles of constitutional law regarding legal standing to challenge the constitutionality of code articles and statutes:
113Although this court generally possesses the power and authority to decide the constitutionality of the provisions challenged in defendant’s motion to quash his [information], it is required to decide a constitutional issue only if the procedural posture of the ease and the relief sought by the appellant demand that [it] do so.... Further, a court should avoid constitutional questions whenever a case can be disposed of on non-constitutional grounds.... One of the threshold non-constitutional issues that must be decided by a court before it may consider a constitutional challenge to a legal provision is whether the person challenging the provision has standing.
Id., 2003-3015, pp. 7-8; 874 So.2d at 834 (internal citations and quotations omitted). In order to have standing to challenge the constitutionality of a legal provision, “the person bringing the challenge must have rights in controversy.” Id., 2003-3015, p. 8; 874 So.2d at 834. Specifically, “a person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights.” Id.; see also State v. Baxley, 93-2159 (La.2/28/94); 633 So.2d 142, 146.
The facts show Draughter has been under the state’s supervision and/or in the state’s physical custody at all relevant times. On February 22, 2011, he was sentenced to two years imprisonment at hard labor on his plea of guilty to attempted simple burglary. His sentence was suspended on the condition he serve two years of active probation, set to expire on February 22, 2013. While on probation, the defendant then allegedly committed the violation of La. R.S. 14:95.1 on April 18, 2012.[11] On January 31, 2013, the trial court revoked defendant’s probation for the burglary conviction and made the original two-year suspended sentence executo-ry, placing him in the physical custody of the Department of Corrections (“DOC”).
DOC records, to which we have access, affirm the defendant’s assertion that he secured his release from the penitentiary for good behavior on February 27, 2013. The defendant has not, however, satisfied his original sentence for the felony conviction. The DOC gives him a full term date of April 14, 2014, and, in |uthe interim, defendant remains on parole by operation of La. R.S. 15:571.5(A), which provides: “[w]hen a prisoner committed to the Department of Public Safety and Corrections *866 is released because of diminution of sentence pursuant to this Part [a good time release], he shall be released as if released on parole.” Thus, at no time in this case has defendant been free from state custody or supervision. While the state and the defendant dismiss the significance of his state custody and/or supervision at the time he was arrested for this offense, that status is the defining circumstance in the present case and a critical factor in determining whether the defendant may avail himself of the strict scrutiny now required by article I, section 11 for laws purporting to restrict the right to bear arms by the citizens of this state.
Draughter’s status as a person still under state supervision at the time of his arrest for the instant offense narrows the scope of our review significantly. The only constitutional question actually raised by the present case is whether a convicted felon, who remains under state custody and supervision, may assert a constitutional right to bear arms, the infringement of which is subject to strict scrutiny review. As to that question, Draughter clearly has standing to raise the constitutionality of the statute. The larger question,, previously addressed by the court in Amos — whether the state may dispossess certain convicted felons of their right to bear arms for a number of years, even after they have paid their debt to society and fully discharged their sentences — is not again before the court. As to that larger question, we find Draughter does not have standing to challenge the constitutionality of La. R.S. 14:95.1. See State v. Sandifer, 1995-2226, p. 12 (La.9/5/96); 679 So.2d 1324, 1332 (person may not challenge statute on the ground that it may conceivably be applied unconstitutionally to others in other situations not before the court).

Analysis

This court has held that, subject to the legitimate requirements of prison | t Sdiscipline and security, even a person convicted of a crime and incarcerated retains fundamental constitutional rights and protections. See State v. Patrick, 381 So.2d 501, 503 (La.1980) (prisoners are not totally bereft of Fourth Amendment rights by virtue of their incarceration, but those rights are diminished in nature and scope due to their confinement for criminal conduct); see also Hudson v. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (“Indeed, we have insisted that prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.”). There are, however, some fundamental constitutional rights which, by necessity, must be curtailed entirely to accommodate the institutional needs and objectives of the prison setting. Hudson, 468 U.S. at 524, 104 S.Ct. at 3199. The right to keep and bear arms found in article I, section 11 is one such constitutional protection which must be curtailed entirely in the prison setting. Just as “the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell,” Hudson, 468 U.S. at 526, 104 S.Ct. at 3200, so, too, is the right to possess a firearm diametrically in conflict with the concept of incarceration and the needs and objectives of penal institutions. As the Supreme Court found in Hudson regarding an inmate’s right to privacy in his prison cell, “it would be literally impossible to accomplish ... prison objectives” if inmates retained a Fourth Amendment proscription against unreasonable searches. Hudson, 468 U.S. at 527, 104 S.Ct. at 3200. Similarly, an inmate in jail or prison has no right to possess any firearm, a matter of compel *867 ling necessity no one would seriously dispute.
The precise question here is whether La. R.S. 14:95.1 unconstitutionally infringes upon Draughter’s right to possess a firearm as a convicted felon who was |1fistill under the state’s supervision, but was no longer in its physical custody.[12] As a probationer or parolee, Draughter was still serving a portion of the sentence which he received for violation of a criminal law serious enough to be categorized as a felony. Although speaking specifically of inmates in a custodial setting, the following Supreme Court characterization applies equally to those convicted felons who are serving sentences of probation or parole, as they
... have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.
Hudson, 468 U.S. at 526, 104 S.Ct. at 3200. By necessity, the state must exercise continuing supervision and control over these convicted felons as they complete the punishments which have been meted out for their criminal activity.
For these persons still under state supervision, we easily find there to be a compelling state interest for the state’s limited infringement of even fundamental constitutional rights, including the right to possess a firearm. These persons are still serving a portion of a criminal sentence. There will necessarily be intrusion into their lives by state actors administering the supervision required by their status. The possession of a firearm is inconsistent with that status and would subject the individuals tasked with their supervision to an untenable safety risk.[13] As this court found in Amos, the felon in possession statute:
... was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of |17certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.
Id., 343 So.2d at 168. The governmental interest served by this statute as applied to persons under the state’s supervision and control may be described as an interest of the “highest order.” See Warner, 2005-1303, p. 46; 21 So.3d at 252.
Having found the statute serves a compelling governmental interest as applied to a person still under state supervision, we find La. R.S. 14:95.1 also satisfies the requirement that it be narrowly tailored to serve that compelling interest. The statute at issue actually advances the state’s interest in preventing persons under state supervision from possessing firearms. This rule is reasonably necessary and is *868 the least restrictive means to serve and further the state’s interest.[14] Because of the defendant’s status as a person under state supervision, the precise parameters of whether the statute is under-inclusive or over-inclusive in other factual settings cannot be fully explored. Warner, 2005-1303, pp. 47-50; 21 So.3d at 252-254.
Finding both a compelling state interest in the state’s regulation of a convicted felon still under the state’s supervision in La. R.S. 14:95.1 and that the statute is narrowly tailored to achieve that interest, we hold La. R.S. 14:95.1 survives strict scrutiny and is not an unconstitutional infringement of Draughter’s right to bear arms under article I, section 11, as applied to the narrow fact situation before us today.
CONCLUSION
After reviewing the statute under a strict scrutiny analysis, we hold La. R.S. 14:95.1, as applied to a convicted felon still under state supervision, does not unconstitutionally infringe upon the right to bear arms secured by article I, section 11S11 of the Louisiana Constitution. The district court’s ruling that La. R.S. 14:95.1 is unconstitutional is reversed. The district court’s ruling granting the defendant’s motion to quash the bill of information is reversed. This matter is remanded to the district court for further proceedings.
REVERSED AND REMANDED

. Recognizing the importance his prior felony conviction would have on the scope of our analysis in this case, the court requested supplementation of the record. The supplemented record reveals the defendant was originally charged with attempted burglary of an inhabited dwelling, which was later amended to attempted simple burglary.

. Since this case comes to us in a pre-trial posture, the circumstances of the offense are not presently before us.

. The affidavit also asserted Draughter failed to comply with reporting requirements, payment of supervision fees, and a requirement to obtain employment.

. La. R.S. 49:257(C) provides: "Notwithstanding any other law to the contrary, the attorney general, at his discretion, shall represent or supervise the representation of the interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the legislature is challenged or assailed." See also La.C.Cr.P. art. 62(B), which provides: "The attorney general has authority to institute and prosecute, or to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state."

. La. Const. art. V, § 5(D) provides in pertinent part: "(D) Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."

. Legislative committee minutes for the introduction of the legislation to amend the state constitution show the holdings in these federal cases were discussed, as well as the possibility that these holdings might later be threatened by a change in the composition of the Supreme Court.

. In its original brief, the district attorney's office did not raise the question of the retro-activity of the statute. In supplemental briefing, however, the district attorney’s office has joined with the attorney general’s office in raising this threshold issue.

. See City of New Orleans v. Kiefer, 246 La. 305, 164 So.2d 336 (La.1964) (reasonable legislative regulation approved for alleged infringement of freedom of speech and right to peaceful assembly) and City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (La.1964) (relied upon previous ruling which found similar prohibition unreasonable and arbitrary and bearing no rational relation to public health, safety, morals or welfare for claims of violations of due process, free speech, invasion of privacy, and discrimination) (emphasis added).
The reasonableness standard was also used in subsequent cases which tested La. R.S. 14:95.1 in other contexts. State v. Wiggins, 432 So.2d 234 (La.1983) addressed whether La. R.S. 14:95.1 applied to a defendant who had been automatically pardoned for his prior *863 felony conviction under La. Const. article IV, section 5E(1) and restored all rights of citizenship under La. R.S. 15:572(D). Relying on Amos, the court found the criminal statute applicable to the defendant, as the defendant’s automatic pardon did not erase his status as a convicted felon. Wiggins held: "... we are satisfied that it is reasonable for the legislature in the interest of public welfare and safety to regulate the possession of firearms for a limited period of time by citizens who have committed certain serious felonies. Such a restriction does not unconstitutionally contravene defendant's right to keep and bear arms.” Id., 432 So.2d at 237 (emphasis added). In State v. Williams, 392 So.2d 448 (La.1980), the court held a person charged under La. R.S. 14:95.1 could not attack the predicate felony on collateral constitutional grounds. Id., 392 So.2d at 450. The court reiterated "La. R.S. 14:95.1 represents a reasonable exercise of the police power.” Id. (emphasis added).

. See Second Supplemental Brief of Appellee, p. 3; Second Supplemental Brief on Appeal of the State of Louisiana, Appellant, p. 6.

. La.C.Cr.P. art. 895(A)(6) provides: "(A) When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall ... (6) Refrain from owning or possessing firearms or other dangerous weapons.”

. The defendant admits he was still on active probation at the time of his arrest for the instant offense.

. We are assuming for the sake of this argument that Draughter has such a right to assert. We are not asked here to decide exactly what rights of citizenship are restored to a convicted felon after termination of state or federal supervision.

. We note persons under state supervision are also required as conditions of probation and parole to refrain from engaging in criminal conduct generally and to forego the full exercise of a variety of constitutional rights, including their rights to privacy, to travel freely, to free association, to possess firearms, and to be free of searches except upon probable cause. See e.g. La.C.Cr.P. art. 895(A)(6), (8), (9), and (13)(a); La. R.S. 15:574.4.2(A)(1), (2)(b), (d), (i) and (j). This list is illustrative and is not intended to be exclusive.

. Although the statutory conditions of probation and parole already prohibit the possession of a firearm, we find the legislature, in the exercise of its police power, has the authority to make this violation a separate criminal offense.