# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                           NEWS RELEASE #035

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **1st day of July, 2014**, are as follows:


**BY HUGHES, J.**:


2013-KK-2306        STATE OF LOUISIANA v. CHRISTOPHER EBERHARDT (Parish of St.
                    Tammany)(Constitutionality of LSA-R.S. 14:95.1))
 C/W
                    STATE OF LOUISIANA v. JAMAL C. TAYLOR AND KELIN A. STEVENS
2014-KA-0209        (Parish of Jefferson)

                    For the reasons assigned, we reverse the judgment of the
                    Jefferson Parish district court, rendered in favor of the
                    defendants, Jamal C. Taylor and Kelin A. Stevens, which declared
                    LSA-R.S. 14:95.1 unconstitutional and granted these defendants'
                    motions to quash.  We further affirm the judgment of the St.
                    Tammany Parish district court, rendered in favor of the State of
                    Louisiana, which upheld the constitutionality of LSA-R.S. 14:95.1
                    and denied the motion to quash filed by Christopher Eberhardt.
                    TWENTY-FOURTH JUDICIAL DISTRICT COURT JUDGMENT REVERSED; TWENTY-
                    SECOND JUDICIAL DISTRICT COURT JUDGMENT AFFIRMED.

SUPREME COURT OF LOUISIANA

NO. 2013-KK-2306

STATE OF LOUISIANA

VERSUS

CHRISTOPHER EBERHARDT

ON SUPERVISORY WRITS TO THE TWENTY-SECOND JUDICIAL
DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

CONSOLIDATED WITH

NO. 2014-KA-0209

STATE OF LOUISIANA

VERSUS

JAMAL C. TAYLOR AND KELIN A. STEVENS

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT
COURT FOR THE PARISH OF JEFFERSON

**HUGHES, J.**

In 2012 by a seventy-three percent majority the people voted to amend Article I, Section 11 of the Louisiana Constitution, effective December 10, 2012, which now provides:

**The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.**

Prior to its amendment this article provided that, "The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person."

The purpose of the amendment is to strengthen and protect from government intrusion the right of our citizens to keep and bear arms. While many have always

considered the right fundamental, that has now been made clear, and any restriction may occur only after the highest level of review, "strict scrutiny."

Some arrested or convicted of crimes involving firearms have attempted to show that the laws under which they were charged do not withstand strict scrutiny and are thus unconstitutional.

In these consolidated cases we now reject those arguments. Our law proscribing the possession of firearms by convicted felons is not affected by the amendment and withstands a strict scrutiny analysis. Such laws are effective, time-tested, and easily understandable, and do not violate the constitution. Common sense and the public safety allow no other result.

## FACTS AND PROCEDURAL HISTORY

In the case of **State v. Eberhardt**, the September 17, 2012 St. Tammany Parish felony bill of information charged Eberhardt with: (1) one count of possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, alleging that, on or about June 27, 2012, he illegally possessed a firearm, having been previously convicted of the unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3, on June 11, 2007 in St. Tammany Parish; (2) one count of theft, a violation of LSA-R.S. 14:67, alleging that, between March 6, 2012 and June 25, 2012, he misappropriated or took over $1,500 worth of property belonging to Faye Eberhardt; and (3) one count of cyberstalking, a violation of LSA-R.S. 14:40.3(B)(1), alleging that, on or between November 7, 2010 and August 30, 2011, via electronic mail or electronic communication of words or language, he threatened to inflict bodily harm to a person or such person's child, sibling, spouse, or dependant, or physical injury to the property of a person, or for the purpose of extorting money or other things of value from a person. Eberhardt was also charged by a September 17, 2012 misdemeanor bill of information with

2

one count of first offense possession of marijuana, a violation of LSA-R.S. 40:966(C) and (E)(1), which occurred on or about June 26, 2012.

In the case of **State v. Taylor**, a May 10, 2012 Jefferson Parish grand jury indictment charged defendants Taylor and Stevens, each, with one count of second degree murder, a violation of LSA-R.S. 14:30.1, alleging that, on January 6, 2012, the defendants committed the second degree murder of "a Known Juvenile (DOB 2/23/2000)."[1]

In addition to the charge of second degree murder, Taylor was also charged with: (1) five counts of possession of a firearm by a convicted felon, violations of LSA-R.S. 14:95.1, alleging that, on June 21, 2011, August 2, 2011, November 22, 2011, January 6, 2012, and January 9, 2012, he illegally possessed a firearm, having been previously convicted of possession of cocaine in the United States District Court for the Eastern District of Louisiana; (2) one count of attempt to commit the second degree murder of Derrick Ford on November 22, 2011, a violation of LSA-R.S. 14:27 and 14:30.1; and (3) one count of possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A).

In addition to the charge of second degree murder allegedly committed with co-defendant Taylor, Stevens was also charged with two counts of possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, alleging that, on June 8, 2011 and January 6, 2012, he illegally possessed a firearm, having been previously convicted of second degree battery, a violation of LSA-R.S. 14:34.1, and of possession with intent to distribute marijuana, a violation of LSA-R.S. 40:966(A).

Eberhardt, Taylor, and Stevens all filed motions to quash the felon-in-possession charges against them, in their respective district court proceedings,

---

[1] On July 12, 2012, a third co-defendant, Brandon J. Smith, was joined, along with Taylor and Stevens, in the second degree murder charge; however, Smith was not charged with LSA-R.S. 14:95.1 and did not join in contesting the constitutionality of LSA-R.S. 14:95.1.

asserting the unconstitutionality of LSA-R.S. 14:95.1, which they contend impermissibly infringes on their fundamental right to keep and bear arms, as set forth in LSA-Const. art. I, § 11.  The Jefferson Parish district court ruled in favor of Taylor and Stevens, granting these defendants' motions to quash, and the State appealed the declaration of the ruling of unconstitutionality as to LSA-R.S. 14:95.1.  The St. Tammany Parish district court denied Eberhardt's motion to quash, and he filed a writ application with this court, which was granted.  See **State v. Eberhardt**, 2013-2306 (La. 2/14/14), ___ So.3d ___.  These cases were consolidated for review in this court as they present the same issue, i.e., whether LSA-R.S. 14:95.1 is unconstitutional, as violative of LSA-Const. art. I, § 11.

In appealing the ruling of unconstitutionality rendered in **State v. Taylor**, the State asserts in its assignments of error that the Jefferson Parish district court erred in finding that:  (1) felons are entitled to the right conferred by LSA-Const. art. 1, § 11; (2) LSA-R.S. 14:95.1 is facially unconstitutional; and (3) LSA-R.S. 14:95.1 is unconstitutional as applied to the defendants.  In conjunction with his application for supervisory review, Eberhardt contends the St. Tammany Parish district court erred in failing to hold LSA-R.S. 14:95.1 unconstitutional.

A motion by the Louisiana District Attorneys Association ("LDAA") seeking to file an amicus curiae brief in this court was granted, and the LDAA has submitted arguments in support of the constitutionality of LSA-R.S. 14:95.1.

## LAW AND ANALYSIS

Our standard of review in determining the constitutionality of a statute, a question of law, is de novo.[2]  See **State v. Webb**, 2013-1681 (La. 5/7/14), ___

---

[2] These consolidated cases present no factual issues, as the rulings under review were made following hearings, in the respective district court proceedings, on the defendants' motions to quash.  A motion to quash is essentially a mechanism whereby pre-trial pleas, which do not go to the merits of the charge, are urged.  See **State v. Byrd**, 96-2302 (La. 3/13/98), 708 So.2d 401, 411, cert. denied sub nom. **Peltier v. Louisiana**, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998).

4

So.3d ___, ___; **State v. Draughter**, 2013-0914 (La. 12/10/13), 130 So.3d 855, 860; **City of Bossier City v. Vernon**, 2012-0078 (La. 10/16/12), 100 So.3d 301, 303. A de novo review means the court will render judgment after its consideration of the legislative provisions at issue, the law, and the record, without deference to the legal conclusions of the tribunals below. **City of Bossier City v. Vernon**, 100 So.3d at 303.

The defendants herein have challenged the validity of the charges against them under LSA-R.S. 14:95.1, which makes it unlawful for any person convicted of certain felonies to possess a firearm or carry a concealed weapon. Because the right to keep and bear arms is a fundamental right, as described in LSA-Const. art. I, § 11, a statute restricting that right (here, LSA-R.S. 14:95.1) must survive the test of "strict scrutiny," a test which is mentioned in LSA-Const. art. I, § 11, but not defined. <u>See</u> **State v. Webb**, ___ So.3d at ___.

Under strict scrutiny the government bears the burden of proving the constitutionality of the regulation by showing: (1) that the regulation serves a compelling governmental interest, and (2) that the regulation is narrowly tailored to serve that compelling interest. **State v. Draughter**, 130 So.3d at 862. Strict scrutiny requires a careful examination by our courts, keeping in mind that the fundamental right at issue is one where some degree of regulation is likely to be necessary to protect the public safety. **State in the Interest of J.M.**, ___ So.3d at ___ (quoting **Grutter v. Bollinger**, 539 U.S. 306, 327, 123 S.Ct. 2325, 2338, 156 L.Ed.2d 304 (2003), which stated that in a strict scrutiny analysis "context matters").

The defendants contend, and the Jefferson Parish district court ruled, that LSA-R.S. 14:95.1 is unconstitutional on its face, as violative of LSA-Const. art. I, § 11. The defendants further contend that LSA-R.S. 14:95.1 is unconstitutional as applied to their individual circumstances.

5

Revised Statute 14:95.1 provides:

A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. Notwithstanding the provisions of R.S. 14:27, whoever is found guilty of attempting to violate the provisions of this Section shall be imprisoned at hard labor for not more than seven and one-half years and fined not less than five hundred dollars nor more than two thousand five hundred dollars.

C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

D. For the purposes of this Section, "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.

Subsequent to the 2012 amendment of LSA-Const. art. I, § 11, this court considered the constitutionality of LSA-R.S. 14:95.1 in **State v. Draughter**, 2013-0914 (La. 12/10/13), 130 So.3d 855, and the constitutionality challenge to LSA-R.S. 14:95.1 was rejected in the limited circumstances presented in that case, i.e., vis-à-vis a defendant who had been released from the physical custody of the State, but who continued to be subject to State supervision, on active probation, for his

6

prior conviction. We held that the State has a compelling interest in regulating convicted felons still under the State's supervision, and LSA-R.S. 14:95.1 is narrowly tailored to achieve that interest. This court concluded that LSA-R.S. 14:95.1 survives strict scrutiny and was not an unconstitutional infringement of Draughter's right to bear arms, pursuant to Article I, Section 11, as applied to the narrow fact situation presented in that case. This court's conclusion in **State v. Draughter** was easily reached given that the defendant was still under State supervision and was serving the probation portion of his criminal sentence, which necessarily involved an intrusion into the defendant's life by the State officials administering the supervision required by his status. The possession of a firearm by such a defendant was found to be inconsistent with that status and would subject the individuals tasked with his supervision to an untenable safety risk. We declined to address the "larger question" of whether the State may dispossess certain convicted felons of their right to bear arms for a number of years, even after they have paid their debt to society and fully discharged their sentences, having determined that precise question was not before the court. <u>See</u> **State v. Draughter**, 130 So.3d at 866-68.

Since deciding **State v. Draughter**, we have examined the 2012 amendment to LSA-Const. art. I, § 11 in **State in the Interest of J.M.** (with respect to LSA-R.S. 14:95(A), making illegal the carrying of an intentionally concealed firearm on one's person, and LSA-R.S. 14:95.8, making unlawful the possession of a handgun by a person under the age of seventeen except in certain enumerated circumstances), and in **State v. Webb** (with respect to LSA-R.S. 14:95(E), making unlawful the possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance). In both **State in the Interest of J.M.** and **State v. Webb**, this court upheld the challenged statutes against the defendants' claims that these statutes unconstitutionality violated LSA-Const. art.

7

I, § 11, concluding that each of the challenged statutes was enacted pursuant to compelling government interests and that each was narrowly tailored to achieve legitimate government purposes.

While the status of the defendants in the instant consolidated cases differs from those at issue in **State v. Draughter**, in that the **Draughter** defendants were still under State supervision at the time of their arrests and the instant defendants had completed all aspects of their prior sentences and were no longer under State supervision when they were arrested on subsequent offenses, we nevertheless uphold the validity of LSA-R.S. 14:95.1.

We begin our analysis of the current LSA-Const. art. I, § 11-based challenges to LSA-R.S. 14:95.1 by pointing out that we recognized in **Draughter** that the right to bear arms has always been considered fundamental. The 2012 amendment to LSA-Const. art. I, § 11 merely sought to ensure that the review standard of an alleged infringement of this fundamental right was in keeping with the refinements made to constitutional analysis that developed since our decision in **State v. Amos**, 343 So.2d 166 (La. 1977).[3] See **State v. Draughter**, 130 So.3d at 863. The 2012 amendment of LSA-Const. art. 1, § 11 did not, therefore, effect a change in the nature of the right by adding the term "fundamental" to describe the right to keep and bear arms. **State v. Webb**, ___ So.3d at ___ n.3

---

[3] **State v. Draughter** further recognized that the 2012 amendment to LSA-Const. art. I, § 11 was prompted in part by the slim 5-to-4 Supreme Court majority decisions in the recent cases of **District of Columbia v. Heller**, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (holding that the Second Amendment's right to keep and bear arms extended beyond participation in a citizen militia to "law-abiding, responsible citizens to use arms in defense of hearth and home" and invalidating the District of Columbia's total ban on the possession of handguns and the requirement that citizens keep their firearms inoperative, as the requirement made it impossible for citizens to use firearms for the core lawful purpose of self-defense), and **McDonald v. City of Chicago**, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (holding that the Second Amendment's individual right to bear arms, recognized in **Heller**, is a right fundamental to our scheme of ordered liberty and fully applicable to the states through the Due Process Clause of the Fourteenth Amendment). Partly in response to **Heller** and **McDonald**, Louisiana legislators introduced legislation that ultimately resulted in the 2012 amendment of the State constitution, with the stated intention being to secure and protect Louisiana citizens' right to bear arms under the Louisiana Constitution from possible future judicial or legislative erosion.

As we recognized in **State v. Amos**, the right to keep and bear arms, like other rights guaranteed by our State constitution, is not absolute. Further, the Supreme Court described a similar understanding of the nature and limitations of the right to bear arms in the analogous Second Amendment, in **District of Columbia v. Heller**, 554 U.S. 570, 626, 128 S.Ct. 2783, 2816, 171 L.Ed.2d 637 (2008), stating, "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." See **State in the Interest of J.M.**, ___ So.3d at ___.

This court concluded in **State in the Interest of J.M.** that the voters' ratification of strict scrutiny as a standard of review to be applied to alleged infringements on the right to keep and bear arms was not meant to invalidate every restriction on firearms, whether in existence at the time the amendment was ratified or yet to be enacted. Rather, the strict scrutiny standard adopted by the voters is "designed to provide a framework for carefully examining the importance and sincerity of the reasons advanced by the governmental decisionmaker" for firearm regulation within the context of the fundamental right to keep and bear arms. **State in the Interest of J.M.**, ___ So.3d at ___ (quoting **Grutter v. Bollinger**, 539 U.S. at 327, 123 S.Ct. at 2338).

A measure of ambiguity was created by the fact that the legislature, in its 2012 amendment of LSA-Const. art. I, § 11, omitted from its prior text the phrase "but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person" and by calling for "strict scrutiny" of any restriction on the right to keep and bear arms. Therefore, consideration of the legislative history is appropriate. See **Louisiana Federation of Teachers v. State of Louisiana**, 2013-0120 (La. 5/7/13), 118 So.3d 1033, 1061.

A discussion of the proposed amendment to LSA-Const. art. I, § 11, by Senate Bill No. 303 (later passed as 2012 La. Acts, No. 874), took place on the Senate floor, which is instructive on the issues before this court.[4] During the Senate discussion, the bill's sponsor, Senator Riser, answered questions about the meaning and effect of the bill, raised by Senators Claitor, Thompson, Donahue, Appel, and Long. Senator Riser stated that the purpose of the act was to reinforce the Second Amendment in Louisiana law, so that Louisiana would have the strongest Second Amendment law in the nation should the amendment pass. The aim of the legislature in amending LSA-Const. art. I, § 11 was described by Senator Riser as protecting the fundamental right of individuals to keep and bear arms, in light of the Supreme Court's narrow 5-to-4 majority opinions in **District of Columbia v. Heller** and **McDonald v. City of Chicago**. However, when specifically questioned about the effect the proposed act would have on existing gun laws, Senator Riser stated, "[T]his [act] defines . . . how laws are judged . . . . [W]e roughly have close to forty gun laws right now and those laws will stay in effect." Senator Riser further stated, "Any [weapon] law on the books right now is on the books [and] they are going to stay there . . . . You'll have to follow the current statute[s]." From these discussions, we can conclude that, in passing Act 874, the legislature did not intend to invalidate existing weapons laws.

As declared by this court in **State v. Amos**, it is beyond question that the statute challenged in the instant case, LSA-R.S. 14:95.1, was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous

---

[4] The recorded April 9, 2012 Senate discussion is archived on the Louisiana Senate website (http://senate.la.gov/sessioninfo/Archives/2012/rs.htm at 01:57:44).

disregard for the law and present a potential threat of further or future criminal activity. **State v. Amos**, 343 So.2d at 168.

**State v. Amos** further acknowledged that LSA-R.S. 14:95.1 is addressed to persons who are citizens of this State by virtue of the termination of state or federal supervision following their convictions, pursuant to LSA-Const. art. I, § 20.[5] These persons have previously been convicted of serious criminal offenses, and restoration of citizenship cannot erase this fact. The **State v. Amos** opinion recognized that the verbatim transcripts of the constitutional convention debates indicated that neither LSA-Const. art. I, § 11 nor LSA-Const. art. I, § 20 were ever intended to preclude the type of legislation disputed herein. We are satisfied that it is reasonable for the legislature in the interest of public welfare and safety to regulate the possession of firearms, for a limited period of time, by citizens who have committed certain specified serious felonies. Courts of other states having statutes and constitutional provisions comparable to our own have similarly concluded that such regulation is constitutionally permissible as a reasonable and legitimate exercise of police power. See **State v. Amos**, 343 So.2d at 168. We conclude that the precepts set forth in **State v. Amos** continue to be valid and applicable today.

We also note that in **District of Columbia v. Heller** the Supreme Court, in evaluating the analogous Second Amendment right to bear arms, stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings,

---

[5] Article I, Section 20 provides, in pertinent part: "Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." Nevertheless, this court held in **State v. Adams**, 355 So.2d 917, 922 (La. 1978), that LSA-Const. art. 1, § 20 restores only the basic rights of citizenship, such as the right to vote, work, or hold public office. See **State v. Selmon**, 343 So.2d 720, 721-22 (La. 1977). See also **U.S. v. Dupaquier**, 907 F.Supp. 951, 953-57 (M.D. La. 1995).

or laws imposing conditions and qualifications on the commercial sale of arms." **District of Columbia v. Heller**, 554 U.S. at 626-27, 128 S.Ct. at 2816-17. See also **McDonald v. City of Chicago**, 561 U.S. at ___, 130 S.Ct. at 3047; **U.S. v. Yancey**, 621 F.3d 681, 685 (7th Cir. 2010) ("[S]omeone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use.").

We conclude that LSA-R.S. 14:95.1 serves a compelling governmental interest that has long been jurisprudentially recognized and is grounded in the legislature's intent to protect the safety of the general public from felons convicted of specified serious crimes, who have demonstrated a dangerous disregard for the law and the safety of others and who present a potential threat of further or future criminal activity. See **State v. Amos**, 343 So.2d at 168. Further, the law is narrowly tailored in its application to the possession of firearms or the carrying of concealed weapons for a period of only ten years from the date of completion of sentence, probation, parole, or suspension of sentence, and to only those convicted of the enumerated felonies determined by the legislature to be offenses having the actual or potential danger of harm to other members of the general public.[6] Under these circumstances, we find "a long history, a substantial consensus, and simple common sense" to be sufficient evidence for even a strict scrutiny review. **State in the Interest of J.M.**, ___ So.3d at ___ (quoting **Burson v. Freeman**, 504 U.S. 191, 211, 112 S.Ct. 1846, 1858, 119 L.Ed.2d 5 (1992)).

Furthermore, to challenge a legislative act as unconstitutional on its face is the most difficult challenge to mount successfully, since the challenger must

---

[6] We note that Louisiana's LSA-R.S. 14:95.1 felon-in-possession law is less restrictive than the comparable federal law, which encompasses nearly all felonies and has no ten-year cleansing period. Pursuant to 18 U.S.C.A. § 922 (g): "It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

establish that no set of circumstances exists under which the statute would be valid. **Prejean v. Barousse**, 2012-1177 (La. 1/29/13), 107 So.3d 569, 571-72; **City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund**, 2005-2548 (La. 10/1/07), 986 So.2d 1, 19; **State v. Brown**, 94-1290 (La. 1/17/95), 648 So.2d 872, 875 (citing **United States v. Salerno**, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)). Generally, the legislature may do anything that the constitution does not prohibit. The task is to determine whether the challenged statute is so inconsistent with our constitution that there exists no set of circumstances under which the statute would be valid. See **Prejean v. Barousse**, 107 So.3d at 572. See also **Washington State Grange v. Washington State Republican Party**, 552 U.S. 442, 449, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008) ("[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications."). No such showing can be made in the instant case; as seen in **State v. Draughter**, circumstances clearly exist where LSA-R.S. 14:95.1 is valid. Therefore, we find no merit in the defendants' facial challenge to LSA-R.S. 14:95.1.

We also reject the defendants' argument that LSA-R.S. 14:95.1 is unconstitutional as applied to their individual circumstances.

Each of the three defendants reoffended within a relatively short period of time following the completion of previously imposed State supervision. Stevens was released from State supervision on his prior conviction for possession of marijuana on May 18, 2011, and he was charged with committing a violation of LSA-R.S. 14:95.1 on June 8, 2011, only three weeks later. Eberhardt was released from State supervision on his prior conviction of unauthorized entry of an inhabited dwelling on May 30, 2010, and he was charged with committing a violation of LSA-R.S. 14:95.1 on June 27, 2012, approximately two years later

(though we note that the third count of the indictment against Eberhardt charged him with cyberstalking, which had allegedly commenced on or about November 7, 2010, only twenty-three weeks after completion of his prior State supervision). Taylor completed his prior federal sentence for possession of cocaine and was released from federal supervision on June 1, 2007, and he was charged with committing a violation of LSA-R.S. 14:95.1 on June 21, 2011, approximately four years later.

These three defendants illustrate, rather than show exceptions to, the principles underlying felon-in-possession laws such as LSA-R.S. 14:95.1, i.e., that certain convicted felons have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity and are more likely than nonfelons to engage in illegal and violent gun use. These cases demonstrate that convicted felons are not only at risk to reoffend, but are at risk to reoffend using firearms.

In the case of Taylor and Stevens, a firearm was used in the second degree murder for which they are charged as co-defendants in this case. This is exactly the type of offense LSA-R.S. 14:95.1 was enacted to prevent.

In Eberhardt's case, his weapon possession offense does not appear to be connected to his other charged offenses of cyberstalking and theft. Eberhardt further suggests that his prior offense of unauthorized entry of an inhabited dwelling had no connection to possession of a firearm and that, therefore, as applied to his circumstances, LSA-R.S. 14:95.1 is not narrowly tailored to ensure public safety. We find no merit in Eberhardt's argument. While Eberhardt might not have armed himself before committing unauthorized entry of an inhabited dwelling, the entry by an unauthorized person into the residence of another presents a situation of potential harm to the occupant who may resist the intrusion, in that the offender may nevertheless acquire a weapon on the premises and use it

14

to cause harm to others.  Moreover, some inhabited dwelling offenders go on to reoffend with a weapon.  See **State v. Wiggins**, 2013-0649 (La. App. 1 Cir. 1/31/14), ___ So.3d ___ (wherein the defendant was previously convicted of simple burglary of an inhabited dwelling and subsequently reoffended with a firearm and attempted to kill his victim); **State v. Shepherd**, 2008-1556 (La. App. 3 Cir. 6/3/09), 11 So.3d 729 (wherein the defendant entered the residence of the victim, without authorization, and then armed himself with the victim's weapon and shot the victim in the chest).  We do not find as applied over-inclusiveness in Eberhardt's case.  The offense of unauthorized entry of an inhabited dwelling carries such a high potential for harm to innocent bystanders that its inclusion by the legislature within the ambit of LSA-R.S. 14:95.1 is clearly warranted. Furthermore, it is impossible for the legislature to predict with complete certainty which offenders will reoffend with a firearm, and including those offenses that demonstrate a serious disregard for the safety of others within LSA-R.S. 14:95.1's felon-in-possession prohibition is appropriate given the compelling state interest in protecting the public.[7]

---

[7] Eberhardt also cites the first offender pardon he received from the Department of Public Safety and Corrections ("DPSC") after completing his probation; the June 24, 2010 DPSC notice stated that Eberhardt had completed his sentence for unauthorized entry of an inhabited dwelling and had met all of the requirements for an automatic first offender pardon, under LSA-R.S. 15:572(D), and further stated:  "[A]s provided by Article 1, Section 20, and Article 4, Section 5(E)(1), of the Louisiana Constitution, this will certify that effective May 30, 2010, CHRISTOPHER EBERHARDT has discharged his/her sentence for the above stated offense(s) and that all rights of citizenship and franchise are restored in Louisiana."  However, the "verification of first offender pardon" received by Eberhardt also notified him that "[t]he right to receive, possess or transport a firearm may not be restored unless all legal provisions are met and should be determined through the local law enforcement agency."  At the time the June 24, 2010 notice was sent to Eberhardt, LSA-R.S. 14:95.1(C) provided that, in addition to the ten-year cleansing period, a convicted felon who had completed his sentence, probation, parole, or suspension of sentence could apply to the sheriff of the parish in which he resided for a permit to possess a firearm; this discretionary sheriff's permit procedure was repealed by the Louisiana Legislature by 2010 La. Acts, No. 942, § 1, effective August 1, 2010.  There is no indication that Eberhardt applied for a sheriff's permit to possess a firearm between his date of eligibility, May 30, 2010, and the date that the repeal of the sheriff's permit provision became effective, August 1, 2010.  In the absence of such a permit, the restoration of citizenship rights accorded by an LSA-R.S. 15:572(D) automatic pardon to first offenders does not exempt such an offender from the application of LSA-R.S. 14:95.1.  See **State v. Wiggins**, 432 So.2d 234, 236-37 (La. 1983); **State v. Riser**, 30,201 (La. App. 2 Cir. 12/12/97), 704 So.2d 946, 949-50.

We find no merit in the as applied challenges asserted by these defendants.

## CONCLUSION

We conclude that LSA-R.S. 14:95.1 is not unconstitutional as violative of LSA-Const. art. I, § 11.

## DECREE

For the reasons assigned, we reverse the judgment of the Jefferson Parish district court, rendered in favor of the defendants, Jamal C. Taylor and Kelin A. Stevens, which declared LSA-R.S. 14:95.1 unconstitutional and granted these defendants' motions to quash. We further affirm the judgment of the St. Tammany Parish district court, rendered in favor of the State of Louisiana, which upheld the constitutionality of LSA-R.S. 14:95.1 and denied the motion to quash filed by Christopher Eberhardt.

**TWENTY-FOURTH JUDICIAL DISTRICT COURT JUDGMENT REVERSED; TWENTY-SECOND JUDICIAL DISTRICT COURT JUDGMENT AFFIRMED.**

16