944 So.2d 588 (2006)
STATE of Louisiana
v.
Stanley J. BRUMFIELD.
No. 2005 KA 2500.
Court of Appeal of Louisiana, First Circuit.
September 20, 2006.
Rehearing Denied December 28, 2006.
*591 Camille A. Morvant, II, District Attorney, Joseph S. Soignet, Assistant District Attorney, Thibodaux, for State of Louisiana.
Frank Sloan, Louisiana Appellate Project, Mandeville, for Defendant-Appellant Stanley J. Brumfield.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
The defendant, Stanley J. Brumfield, was charged by bill of information with one count of possession of and/or carrying a weapon by a convicted felon (Count 1), a violation of LSA-R.S. 14:95.1, and one count of aggravated battery (Count 2), a violation of LSA-R.S. 14:34. The defendant, represented by counsel, pled not guilty to both counts. At a hearing on a motion to suppress, the defendant sought to suppress the admission into evidence of the handgun seized by Deputy Treverse Johnson. The motion was denied. The defendant objected to the trial court's ruling. Following a jury trial, the defendant was found guilty as charged on both counts. He was sentenced to twelve years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on Count 1, and ten years of imprisonment at hard labor on Count 2. The sentences were ordered to run concurrently. The defendant now appeals, asserting in his sole assignment of error that the trial court erred in denying his motion to suppress the evidence. We affirm the convictions. We affirm the sentence as to Count 2, and vacate the sentence and remand for resentencing as to Count 1.

FACTS
On February 11, 2005, Daimar Gustave went to April Preston's house in Thibodaux to see if she wanted to come back to his cousin's house to record some rap music. Daimar had dated April in the past. When Daimar knocked on April's door, the defendant, April's boyfriend, opened the door and struck Daimar in the face with a handgun. Daimar was cut above his left eye. The defendant then pointed the handgun at Daimar and told him that if he came any closer, he was going to blow his head off. The defendant went back into the house, and Daimar left and called the police.
After the defendant struck Daimar, April and the defendant went across the street to a neighbor's house. They used the phone and left. While April and the *592 defendant were standing outside, Daimar and his friends came back to the scene. When April and the defendant saw Daimar and heard police sirens, they ran to another neighbor's house, a trailer home owned by Tammy Carcisse. Apparently, Daimar saw the defendant go into the trailer.
Deputy Treverse Johnson of the Lafourche Parish Sheriff's Office investigated the incident. Daimar told Deputy Johnson what happened and pointed out the trailer that the defendant had run into. Deputy Johnson approached the trailer and knocked on the door. Roland Carcisse, Jr., Tammy's fifteen-year-old son who lived there, told Deputy Johnson, after initially denying the defendant was there, that the defendant was inside and pointed out the bedroom he was in. Deputy Johnson entered the trailer and found the defendant and April hiding in the bedroom. He apprehended the defendant and searched him for weapons, but found none. He placed the defendant in the back of his police unit. He then went back into the trailer to search for the handgun that the defendant had used to strike Daimar. Deputy Johnson found a loaded .380 Lorcin pistol in the cabinet under the bathroom sink. The bathroom was adjacent to the bedroom where the defendant was found. The handgun was introduced into evidence at trial.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence. Specifically, the defendant contends that the investigating officer did not have consent to enter the premises to search for the defendant, and the officer had neither consent nor a warrant to search for the handgun.
It is well established that the Fourth Amendment protects people, not simply places, against unreasonable searches and seizures. The crucial question in cases such as this is whether or not there is a legitimate expectation of privacy. Both the Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution protect only reasonable expectations of privacy. If it is determined that the accused had no reasonable expectation of privacy in the area invaded, neither a warrant nor an exception to the warrant requirement is needed for the seized evidence to be admissible. The test by which a person's "expectation of privacy" is measured is twofold: first, the person must exhibit an actual subjective expectation of privacy and, second, the expectation must be one that society is prepared to recognize as reasonable. State v. Paulson, 98-1854 (La.App. 1st Cir.5/18/99), 740 So.2d 698, 700-01.
The Carcisse trailer is the one in which the defendant and April were found hiding from the police. April lived across the street and knew Roland lived at that trailer. However, the defendant was not from the area. When April walked into the Carcisse trailer, the defendant simply followed her because he had nowhere else to go. At trial, the defendant testified on direct examination as follows:
Q. Y'all went to the trailer. What did y'all do once you got to the trailer?
A. Well, April knocked on the door. I was standing outside. April knocked on the door and she went in the trailer and then I went in right behind her.
Q. OK.
A. Because I wasn't from around there and I ain't had nowhere else to go, so I wasn't going to stand outside.
On cross-examination, the defendant testified as follows:
Q. Where did you go when you left the altercation?

*593 A. Well, we went to the first trailer.
Q. Was that at Pam?
A. Yes, that'swent by Pam. We went to that trailer there. So, when his friends and all of them came, we were standing across the street, so we ain't knew that he had called the police, and then the police came and she broke out running, so I ran behind her, and then she went in the trailer. At first I wasn't going to go in the trailer. She went in the trailer. And then I just went in the trailer behind her because I ain't had nowhere else to go, you know, and I ain't going to be stuck out and let nobody jump on me.
It is clear from the testimony of the defendant that he had no connection or association with the Carcisse family or their trailer. He went to the trailer because he was following his girlfriend, who was from the area, and because he, being unfamiliar with the area, had nowhere else to go. Nothing in these facts indicates that the defendant had any expectation of privacy in a place new to him and where people unknown to him lived. Moreover, even if the defendant felt, from his own subjective perspective, that he was entitled to some privacy in the trailer, we find that society would not be prepared to recognize as reasonable an expectation of privacy in an unfamiliar place used solely for the unlawful purpose of hiding out from the police and discarding a weapon used in a crime.[1]
We conclude the defendant had no reasonable expectation of privacy in the trailer where his handgun was seized. Thus, the protection of the Fourth Amendment does not apply. See Paulson, 740 So.2d at 701. However, the defendant has standing under Article I, § 5 of the Louisiana Constitution to assert Tammy's loss of her privacy rights, as he has been adversely affected by the search of her home. See State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396, 397 (per curiam).
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject to a few specifically established and well-delineated exceptions. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving the consent was given freely and voluntarily. State v. Owen, 453 So.2d 1202, 1205-06 (La.1984). Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises sought to be inspected. State v. Aucoin, 613 So.2d 206, 208 (La.App. 1st Cir.1992). The determination of the voluntariness of the consent turns on the overall facts and circumstances of the particular case. The trial judge's factual determination on this issue is entitled to great weight on appellate review. State v. Franklin, 95-1876 (La.1/14/97), 686 So.2d 38, 41. In determining whether the ruling on the defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the *594 trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
Deputy Johnson testified at trial that, when he knocked on the door of the trailer in which the defendant was suspected to be, Roland answered the door. When Deputy Johnson asked Roland if the defendant and April were in there, Roland first told him that they were not. Deputy Johnson explained to Roland that he could get a search warrant and that, if the defendant was, in fact, found to be in the residence, Roland could be held accountable for aiding and abetting a fugitive. At this point, Roland informed Deputy Johnson that the defendant was there. When Deputy Johnson asked where the defendant was, Roland told him that he was in the bedroom. When Deputy Johnson entered the residence, Roland pointed out to him where the bedroom was.[2]
Deputy Johnson also testified at the motion to suppress. When asked on direct examination if Roland allowed him to enter the premises, Deputy Johnson responded, "Yes." During the defendant's cross-examination of Deputy Johnson, the trial court asked several questions, including the following:
The Court:
OK. How did you get into that residence?
[Deputy Johnson]:
With permission from her son.
The Court:
The 15-year-old?
[Deputy Johnson]:
Yes, sir.
Following this exchange, defense counsel resumed cross-examination and asked Deputy Johnson, "Did he give you permission to come in or did you go in once you determined that Mr. Brumfield might be in the residence?" Deputy Johnson replied, "No, sir. He gave us permission."
We find that the testimony at both the trial and the motion to suppress established that Roland freely gave Deputy Johnson his consent to search the trailer for the defendant.[3] When Deputy *595 Johnson found the defendant in the bedroom, he seized him and placed him in custody. He patted him down, but found no weapon. He then brought the defendant to his police unit and placed him in the rear of the vehicle. Deputy Johnson immediately returned to the trailer and conducted a warrantless search for the defendant's handgun. Further, there is nothing in the facts to indicate that Deputy Johnson was given consent by Roland, or anyone in the trailer, to search for the handgun.
A police officer needs both probable cause to search and exigent circumstances to justify a non-consensual warrantless intrusion into private premises. State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923, 927. Probable cause for a search exists when facts within the officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a reasonable man in the belief that the place to be searched will contain the object of the search. State v. Ragsdale, 381 So.2d 492, 495 (La. 1980). As discussed in footnote three, Deputy Johnson was told by the victim that he was hit by a gun. The handgun was described as small and silver and black. When Deputy Johnson seized and searched the defendant, he found no handgun on his person. According to the testimony of Deputy Johnson at both the trial and the motion to suppress, April told Deputy Johnson that the defendant had a gun when they left her house and crossed the street. After that, however, she did not know what the defendant did with the gun.[4] Based on these facts, Deputy Johnson clearly had probable cause to suspect that the defendant's handgun was somewhere in the trailer.
Deputy Johnson testified at the motion to suppress that he knew the family that lived at the trailer. He stated that he knew the owner, Ms. Tammy Carcisse, and he knew that she had small children.[5] He went back into the trailer to search for the handgun because he was concerned that one of the children might find it.[6] He searched the areas that he felt were within the defendant's access and where he could have hidden the handgun. The issue for us to determine is whether or not Deputy Johnson's warrantless search for the handgun, under these particular facts, was pursuant to exigent circumstances. We find that it was.
Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982). This list, of course, is only illustrative and not exclusive. The United States Supreme Court in Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001) has defined *596 exigent circumstances as "a plausible claim of specially pressing or urgent law enforcement need." In State v. Shumaker, 40,275 (La.App. 2nd Cir.10/28/05), 914 So.2d 1156, 1167-68, the second circuit upheld a warrantless search of a trailer based on exigent circumstances. A strong chemical odor of ammonia in the yard led officers to believe methamphetamine was being manufactured in the trailer. The court stated that "[u]nder these circumstances, clear public safety concerns associated with the illegal manufacture of methamphetamine existed for the officers' entrance into the trailer without a warrant." Shumaker, 914 So.2d at 1168.
In the instant matter, Deputy Johnson testified at the motion to suppress that he went back to the trailer to search for the gun because he knew small children resided at the trailer, and he feared that one of them might find the gun. Other jurisdictions have found that the warrantless search for a weapon out of concern for the safety of others was permissible under the exigent circumstances exception to the warrant requirement. In United States v. Antwine, 873 F.2d 1144, 1145-47 (8th Cir. 1989), the defendant pointed a handgun at two FBI agents, who were speaking to him at his front door. The agents backed off, and the defendant shut his door. About twenty minutes later, the defendant came outside and was arrested in his front yard. Agent Moore then entered the house and conducted a protective sweep. He discovered that there was an eleven-year-old boy and small girl in the house. He decided to search the house for the handgun so as not to leave the children alone with the weapon. His sole purpose for searching for and recovering the weapon was the safety of the children. The court found that the warrantless seizure of the handgun, necessitated by the exigency, was not unreasonable.[7]
In Sturdivant v. United States, 551 A.2d 1338 (D.C.1988), cert. denied, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989), officers arrested the defendant at his house after receiving information that he had shot someone with a sawed-off shotgun. Jones, a co-defendant, who was also at the house, informed the officers that the gun was in the attic crawl space.[8] While the defendant was being taken to police headquarters, officers conducted a warrantless search for the gun. They found the gun and seized it. Sturdivant, 551 A.2d at 1339-40. In finding that exigent circumstances existed, the court stated:
At the time the police commenced the search, they knew that a sawed-off shotgun had been used in a serious crime and that it had not been retrieved. We have observed that the presence of such weapons creates a special exigency because of their potential threat to human life. . . . In addition, the police knew that if the gun remained in the house after appellant and Jones were removed, the other members of the family who *597 had not been arrested would still have access to it and could use or destroy it.
Sturdivant, 551 A.2d at 1342.
In Cady v. Dombrowski, 413 U.S. 433, 442-47, 93 S.Ct. 2523, 2529-31, 37 L.Ed.2d 706 (1973), the Supreme Court found that the warrantless search and seizure of a weapon by a police officer from the trunk of a vehicle towed to a private garage was not unreasonable. The Court stated, "Here the justification, while different, was as immediate and constitutionally reasonable as those in Harris [v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) ] and Cooper [v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) ]: concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." Dombrowski, 413 U.S. at 447, 93 S.Ct. 2523. In Commonwealth v. Stewart, 740 A.2d 712 (Pa.Super.1999), after receiving information about a shooting from a vehicle, police officers arrested the defendant who was a passenger in the suspect vehicle and was identified by the victim as one of the shooters. The defendant and the driver were taken into custody. They were patted down, but no weapons were found on their persons. An officer conducted a warrantless search of the vehicle and found two handguns under the mats. Stewart, 740 A.2d at 714. In finding exigent circumstances, the court stated:
The officers were faced with two equally difficult and dangerous situations: innocent persons finding the gun and getting hurt as they handled it and an officer being injured by the gun as he stepped into the car to turn off the ignition. The officers and the public were in danger if the weapons were not recovered; thus, there was a need for immediate police action.
Stewart, 740 A.2d at 718-19.[9]
We find that in the instant matter, the highly probable threat of the presence of a handgun at the trailer where several children lived created a special exigency for Deputy Johnson. Under these exigent circumstances, it was not unreasonable for Deputy Johnson, in protecting the safety and welfare of children, to search for and seize the defendant's loaded handgun from the trailer immediately following the securing of the defendant in his police unit and the questioning of April about the fight with the victim and about the defendant having a gun on his person.[10] We also note that the scope of Deputy Johnson's warrantless search did not exceed what was necessitated by the exigency. Deputy Johnson did not look for anything else, and he looked only in the immediate area where the defendant had been initially seized. He simply found the handgun and seized it. See Antwine, 873 F.2d at 1147. Also, the entire incident  *598 from the time the defendant was placed into custody to the time the handgun was discoveredtook only approximately twenty minutes. The trial court did not err in denying the motion to suppress.
The assignment of error is without merit.

PATENT ERROR
Whoever is found guilty of violating the provisions of LSA-R.S. 14:95.1 shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. LSA-R.S. 14:95.1(B). In the instant matter, the trial court sentenced the defendant to twelve years at hard labor, but failed to impose the mandatory fine upon the defendant pursuant to LSA-R.S. 14:95.1(B).
Because the amount of the fine lies in the trial court's discretion, the correction of the sentencing error must be made by the trial court, rather than by amendment by this court. See State v. Haynes, 04-1893 (La.12/10/04), 889 So.2d 224 (per curiam). Accordingly, we vacate the sentence imposed on Count 1 and remand for resentencing in accordance with law. See LSA-C.Cr.P. art. 881.4(A); State v. Paoli, 01-1733 (La. App. 1st Cir.4/11/02), 818 So.2d 795, 799-800 (en banc), writ denied, 02-2137 (La.2/21/03), 837 So.2d 628.

DECREE
For the foregoing reasons, the defendant's convictions are affirmed; the sentence imposed on Count 2 is affirmed; the sentence imposed on Count 1 is vacated; and this matter is remanded to the trial court for resentencing on Count 1 in accordance with law.
CONVICTIONS AFFIRMED. SENTENCE AS TO COUNT 2 AFFIRMED; AS TO COUNT 1, SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] See State v. Henry, 440 So.2d 872, 874 (La. App. 2nd Cir.1983), where the court found the defendant had no right to an expectation of privacy in his girlfriend's house where he did not reside and only stayed occasionally; see also State v. Fielding, 37,943 (La.App. 2nd Cir.12/10/03), 862 So.2d 420, 430, writ denied, 04-0249 (La.1/14/05), 889 So.2d 256, where the court found the defendant had no expectation of privacy in an abandoned house owned by someone else and used by the defendant to occasionally sleep in and hide his gun.
[2] Roland's status as a minor did not vitiate his consent. See Gregoire v. Henderson, 302 F.Supp. 1402, 1407 (E.D.La.1969), where the court found that a seventeen-year-old boy, who permanently lived in his home, was capable of giving valid consent to a police officer to search the premises. See also State v. Smith, 504 So.2d 1070, 1075 (La.App. 1st Cir.1987), where this court found that an occupant of the residence consented freely and voluntarily to the officers' entry into the residence to search for the defendant, and that the officers were correct and justified in informing him that he could be charged with accessory after the fact for aiding the defendant in eluding detection by officers.
[3] When Deputy Johnson found the defendant in the bedroom, he had probable cause to arrest him. A peace officer may arrest a person without a warrant when the "peace officer has reasonable [probable] cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer[.]" LSA-C.Cr.P. art. 213(3). See State v. Billiot, 370 So.2d 539, 543 (La.1979), cert denied, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979). Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Leatherwood, 411 So.2d 29, 32 (La.1982). Shortly prior to Deputy Johnson's entering the trailer, Daimar informed him that "a Stanley" had hit him with a gun and that he was hiding in the residence across the street. Deputy Johnson testified at trial that, while he was getting this information from Daimar, Daimar had a laceration over his left eye and was bleeding. His shirt was full of blood and his eye was swollen. Daimar's wounds were fresh, and he was treated at the scene in an ambulance by medical personnel. Thus, the condition of the victim of a very recent crime, information provided by the victim as to the defendant's identity and whereabouts, and the discovery of the defendant hiding out in the trailer identified by the victim, were facts and circumstances clearly sufficient to justify Deputy Johnson's belief that the defendant had committed a crime.
[4] April testified at the trial that the defendant punched Daimar in the face, but not with a gun. She testified that the defendant did not have a gun during the incident. She also testified that the defendant did not have a gun when they left her house and went across the street.
[5] Allen Jackson testified at the trial that Tammy was his girlfriend and that he lived with her. He testified that the ages of the children who lived with him and Tammy were 8, 14, 15, and 18.
[6] Other than Roland, it is not clear from the record who was at home when Deputy Johnson searched for the handgun.
[7] The Antwine court was guided by New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), in which the Supreme Court created a "public safety" exception to the rule that the product of a custodial interrogation not preceded by Miranda warnings is inadmissible. Antwine, 873 F.2d at 1146. The Antwine court stated, "The clear implication of Quarles is that a warrantless seizure of a weapon may be considered `reasonable' within the meaning of the Fourth Amendment when justified by an officer's legitimate concern for someone's safety." Antwine, 873 F.2d at 1147.
[8] The government did not argue the search was pursuant to consent. It was not clear whether Jones consented to the search or had authority to do so. Sturdivant, 551 A.2d at 1340.
[9] We are mindful that Dombrowski and Stewart are automobile cases and that, pursuant to the "automobile exception," citizens are afforded less Fourth Amendment protection in their vehicles than in their homes. Nevertheless, because these cases employ the same rationale as the premises cases, i.e., the presence of weapons may create a special "public safety" exigency because of their potential threat to human life, we include them in our analysis.
[10] We find no significance in Deputy Johnson's testimony at trial, wherein he mischaracterizes his search for the defendant's handgun as a "protective sweep." A protective sweep, aimed at protecting the arresting officers, is not a full search of the premises, but extends only to a cursory inspection of those spaces where a person may be found. Maryland v. Buie, 494 U.S. 325, 335, 110 S.Ct. 1093, 1099, 108 L.Ed.2d 276 (1990). In other words, the protective sweep is to find persons, not items. Deputy Johnson's mere mislabeling of his actions does not change the reasonableness or constitutionality of those actions.