THERIOT, J.
IpThe defendant, Duhon Zeno, was charged by an amended bill of information with one count of possession of a firearm *8 by a convicted felon (count I), a violation of La. R.S. 14:95.1, and one count of illegal carrying of weapons while in possession of a controlled dangerous substance (Hydro-codone) (count II), a violation of La. R.S. 14:95(E). He pled not guilty on both counts. Following a jury trial, the defendant was found guilty as charged on both counts by a unanimous verdict.[1] He moved for a new trial and post-verdict judgment of acquittal. The trial court denied both motions. The defendant was ordered to pay a fine of one-thousand dollars in court costs; to serve fifteen years at hard labor without benefit of parole, probation, or suspension of sentence on count I; and to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence on count II, to run concurrently with the sentence imposed on count I. Defendant moved for reconsideration of the sentence, and the motion was denied. The defendant appeals, raising nine assignments of error:
1. Louisiana Revised Statutes 14:95.1 is unconstitutional as it fails to meet the requirements of Article I, Section 11 of the Louisiana Constitution.[2]
2. The trial court erred in the denial of the motion to quash the bill of information.
3. The defendant’s prosecution in this matter violates his rights against double jeopardy.
[¾4. The verdicts rendered are legally infirm due to an improperly constituted petit jury.
5. The trial court erred in the denial of the motion for new trial.
6. The trial court erred in the denial of the motion for post-verdict judgment of acquittal.
7. The trial court erred in the denial of the motion to suppress evidence.
8. The trial court erred in the denial of the motion to reconsider sentence.
9. The sentences in this matter are illegal and unconstitutionally excessive.
For the following reasons, we affirm the defendant’s convictions, vacate the sentences imposed on both counts, and remand for resentencing on each count individually.

STATEMENT OF FACTS

On March 15, 2012, at approximately 1 p.m., Agent Derrick Champagne, a narcotics agent with the Lafourche Parish Sheriffs Office, along with fellow Agents David Melancon and Corey Brooks, were traveling southbound on Plantation Road in Thi-bodaux, Louisiana. As they neared the intersection of Plantation Road and Canal Boulevard, they noticed a white vehicle, being driven by the defendant, approach the intersection. The defendant did not bring his vehicle to a complete stop, nor did he activate his turn signal before mak *9 ing a left-hand turn onto Canal Boulevard. After turning onto Canal Boulevard, the agents caught up with the defendant, activated the squad car’s emergency lights and sirens, and initiated a traffic stop. At some point before the defendant’s vehicle came to a complete stop, Agent Champagne and Agent Melancon observed the defendant’s passenger, Stanley Watkins, look back at the agents through the vehicle’s rear window, |4and then turn and throw an unknown object out of the passenger side window.
Once both vehicles were stopped, Agent Melancon made contact with the defendant and advised him of the traffic stop, Agent Champagne approached the passenger, and Agent Brooks began searching for the unknown object. Agent Melancon then asked Watkins to identify the object, but before he could reply, the defendant interrupted, saying, “He doesn’t do any drugs, man.” The agents instructed both men to exit the defendant’s vehicle and moved them towards the rear of the vehicle on the passenger side. Agent Champagne asked the defendant for consent to search the vehicle. The defendant verbally consented to the search and his consent was given freely and voluntarily, and without fear, duress, or intimidation. Agent Me-lancon heard the defendant grant consent. Agent Champagne opened the front passenger door and entered the passenger compartment of the vehicle where he observed a brown shaving kit bag partially underneath the driver’s seat. When Agent Champagne asked the defendant what was in the bag, the defendant approached the car, sat in the driver’s seat, and told Agent Champagne, “[m]y gun is in here from my house.” Agent Champagne noted that the defendant was not surprised when the gun was discovered. The defendant was instructed to put down the bag, and Agent Champagne escorted the defendant out of the vehicle.
Once the defendant was clear of the area, Agent Champagne opened the bag and identified a .45 caliber handgun loaded with eight rounds. Additionally, a prescription pill bottle containing pills was found inside the bag. The seized items were taken to the Criminal Operations Center where the evidence was processed and stored by the evidence custodian.
| r,Katie Troxler, a forensic scientist with the Louisiana State Police Crime Lab, was accepted as an expert in the field of chemical analysis at trial. On April 5, 2012, Troxler received a white plastic bottle containing the pills seized by Agent Champagne during the defendant’s traffic stop. During the first examination, Troxler, using a pharmaceutical database entry, verified the pills, which included Naproxen Sodium 220 mg (Aleve), Pantoprazole Sodium 40 (a gastrointestinal medication), and pills containing both 500 milligrams of Acetaminophen and 5 milligrams of Hydroco-done Bitartrate. Twelve months later, on April 5, 2013, only the pills previously identified as containing Hydrocodone were resubmitted, and Troxler performed a chemical analysis, whereby she again confirmed the pills contained Hydrocodone, a controlled dangerous substance.
Luke Adams, an officer with the Department of Probation and Parole, testified at trial. He testified that on November 6, 2006, the defendant was convicted of possession of Hydrocodone and sentenced to five years at hard labor, but his sentence was suspended and the defendant was placed on three years supervised probation. Officer Adams was the defendant’s probation supervisor, and testified that during the three-year period, the defendant’s probation was never revoked. The probationary period was completed on November 6, 2009 as scheduled.
*10 Greta Hood, a friend of the defendant, testified at trial. She indicated that on March 15, 2012, the defendant was assisting her gathering and packing her belongings as she was moving from her apartment in Thibodaux. Hood testified the gun in question, a Colt .45, belonged to her. She testified that a friend gave her the gun for protection and that she kept it on the top shelf of her closet. Hood testified that because her grandchildren were coming over, and because she did not want the gun out while they were Inhere, she placed the gun inside the defendant’s shaving kit bag, which was located in her bathroom. Thereafter, Hood claimed she walked out of the house holding the bag and placed it under the driver’s seat in the defendant’s vehicle. Hood testified she did not tell the defendant she placed the gun in his car. Hood stated the defendant left the apartment before she did, and the next time she saw him was when he was stopped by the police officers.

ASSIGNMENTS OF ERROR NOS. 5 and 6

In his fifth assignment of error, the defendant argues the trial court erred in denying his motion for new trial.’ In his sixth assignment of error, the defendant argues the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, the defendant contends that Hood’s testimony regarding her actions with the firearm, his consent to search his vehicle, and the fact that he did not attempt to conceal the weapon, demonstrate his lack of knowledge regarding the presence of the firearm. As such, he avers these motions should have been granted.
The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and the defendant’s identity as the perpetrator of that crime, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Patton, 2010-1841 (La.App. 1st Cir.6/10/11), 68 So.3d 1209, 1224. In conducting this review, we must also be expressly mindful of Louisiana’s circumstantial evidence test, ie., “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Millien, 2002-1006 (La.App. 1st Cir.2/14/03), 845 So.2d 506, 508-09.
17When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 2000-0895 (La.11/17/00), 773 So.2d 732.
To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the defendant’s status as a convicted felon; and (2) that the defendant was in possession of a firearm. State v. Loper, 2010-0582 (La.App. 1st Cir.10/29/10), 48 So.3d 1263, 1266. The State must also prove that ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. See La. R.S. 14:95.1(C). Thus, a violation of La. R.S. 14:95.1 by the defendant required no more than that he had a prior felony conviction and was in possession of a firearm.
*11 In pertinent part, La. R.S. 14:95(E) prohibits the carrying of weapons if the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while in the possession of or during the sale or distribution of a controlled dangerous substance. The term “possess” is broad enough to encompass both actual and constructive possession under La. R.S. 14:95(E). Constructive possession occurs when the firearm is subject to the defendant’s dominion and control, even temporarily. Constructive possession contains an element of awareness or knowledge that |8the firearm is there and general intent to possess it. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Although the existence of intent is a question of fact, it may be inferred from the circumstances of the transaction. See State v. Johnson, 2003-1228 (La.4/14/04), 870 So.2d 995, 998-999.
 A thorough review of the record indicates that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of a felon in possession of a firearm, illegal carrying of a weapon while in possession of a controlled dangerous substance, and the defendant’s identity as the perpetrator of the crimes. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.1987), writ denied, 514 So.2d 126 (La.1987). No such alternative hypothesis exists in the instant case. This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfin-der’s determination of guilt. Furthermore, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is on the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La.App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, writ denied. 97-1124 (La.10/17/97), 701 So.2d 1331. Thus, the fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Azema, 633 So.2d 723, 727 (La.App. 1st Cir.1993), writ denied, 94-0141 (La.4/29/94), 637 So.2d 460.
After reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected, by the jury. State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). Therefore, the trial court in the instant case did not abuse its discretion in denying the defendant’s motion for new trial and motion for post-verdict judgment of acquittal.
These assignments of error are without merit.

*12
ASSIGNMENTS OF ERROR NOS. 1 and 2

In his first assignment of error, the defendant argues Louisiana Revised Statutes 14:95.1 is unconstitutional as it fails to meet the requirements of Article I, Section 11 of the Louisiana Constitution. The defendant specifically contends that La. R.S. 14:95.1 cannot pass strict scrutiny because it is not narrowly tailored to achieve a compelling government interest. In his second assignment of error, the defendant claims the trial court erred by denying the motion to quash the bill of information based on the unconstitutionality of La. R.S. 14:95.1.
Louisiana Revised Statutes 14:95.1, provides, in pertinent part:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple | mburglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
* * ⅜
C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
D. For the purposes of this Section, “firearm” means any pistol, revolver, rifle, shotgun, machine gun, sub-machine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.
The Second Amendment to the United States Constitution and Article I, Section 11 of the Louisiana Constitution prohibit the infringement of the right to keep and bear arms. In District of Columbia v. Heller, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821-22, 171 L.Ed.2d 637 (2008), the U.S. Supreme Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense and struck down a District of Columbia Inlaw that banned the possession of handguns in the home. As noted by the U.S. Supreme Court in McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 3042, 177 L.Ed.2d 894 (2010), a clear majority of the States in 1868 recognized the right to keep and bear arms as being among the foundational rights necessary to our system of government, and the framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear *13 arms among those fundamental rights necessary to our system of ordered liberty. Accordingly, the right to bear arms was always fundamental. State v. Draughter, 2013-0914 (La.12/10/13), 130 So.3d 855, 863; Eberhardt, 145 So.3d at 383-84.
It was the slim majority supporting the holdings in Heller and McDonald which prompted Louisiana legislators to enact 2012 La. Acts, No. 874, § 1 to amend Article I, Section 11 of the Louisiana Constitution, which, as a result, specifically states that the right of each citizen to keep and bear arms is “fundamental and shall not be infringed.” The amended version of Section 11 further states that “[a]ny restriction of this right shall be subject to strict scrutiny.”[3] The legislators’ stated intention in introducing this legislation was to secure a continued individual right to bear arms by Louisiana citizens under the Louisiana Constitution, protected from possible future judicial or legislative erosion. Draugther, 130 So.3d at 861; Eberhardt, 145 So.3d at 383, n. 3. The 2012 amendment to Article I, Section 11 merely sought to ensure that the review standard of an alleged infringement of this fundamental right was in keeping with the refinements made to the constitutional analysis developed since State v. Amos, 343 So.2d 166 (La.1977). The amendment, however, did not effect a change in the nature of the right by adding the term “fundamental” to describe the right to keep and bear arms. State v. Webb, 2013-1681 (La.5/7/14), 144 So.3d 971, 977 n. 3; Eberhardt, 145 So.3d at 383-84. Conversely; the Louisiana Supreme Court has also held that “[t]he right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute.” State in Interest of J.M., 2013-1717 (La.1/28/14), 144 So.3d 853, 859-60; Eberhardt, 145 So.3d at 383.
In the two years since Article I, Section 11 was amended, the Louisiana Supreme Court has, on a case-by-case basis, applied the amended language to Louisiana’s various gun laws. In its first case subsequent to the 2012 amendment, the Court held that, when applied to a convicted felon still under State supervision through probation or parole, La. R.S. 14:95.1 does not unconstitutionally infringe upon the right to bear arms secured by the amended Article I, Section 11. Draughter, 130 So.3d at 868. Further, the Court has upheld the constitutionality of La. R.S. 14:95(A)(1) (making illegal the carrying of an intentionally concealed firearm on one’s person) and La. R.S. 14:95.8 (making unlawful the possession of a handgun by a person under the age of seventeen except in certain enumerated circumstances). State in the Interest of J.M., 144 So.3d at 866. Recently, the Supreme Court upheld the constitutionality of La. R.S. 14:95(E), which makes illegal the possession of a firearm while in possession of or during the sale or distribution of a controlled dangerous substance.[4] Webb, 144 So.3d at 975.
11sMost recently, in Eberhardt, the Louisiana Supreme Court directly addressed whether or not La. R.S. 14:95.1 was rendered unconstitutional by the amendment of Article I, Section 11 of the Louisiana Constitution. In Eberhardt, the defendant was charged with one count of possession *14 of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, having been previously convicted of unauthorized entry of an inhabited dwelling. The defendant filed a motion to quash the indictment, but the motion was denied by the trial court. Noting the above principles, the Louisiana Supreme Court, quoting its holding in State in the Interest of J.M., 144 So.3d at 860, stated that “the voter’s ratification of strict scrutiny as a standard of review to be applied to alleged infringements on the right to keep and bear arms was not meant to invalidate every restriction on firearms,” but rather, the strict scrutiny standard was “designed to provide a framework for carefully examining the importance and sincerity of the reasons advanced by the governmental decisionmaker.” After reviewing the Senate hearings,[5] the Court concluded that the amendment to Article I, Section 11 was not intended to invalidate existing weapons laws. Eberhardt, 145 So.3d at 383-85.
After affirming the Court’s earlier ruling in Amos, and evaluating the strict scrutiny standard, the Court concluded:
|14We conclude that La. R.S, 14:95.1 serves a compelling governmental interest that has long been jurisprudentially recognized and is grounded in the legislature’s intent to protect the safety of the general public from felons convicted of specified serious crimes, who have' demonstrated a dangerous disregard for the law and the safety of others and who present a potential threat of further or future criminal activity, See State v. Amos, 343 So.2d at 168. Further, the law is narrowly tailored in its application to the possession of firearms or the carrying of concealed weapons for a period of only ten years from the date of completion of sentence, probation, parole, or suspension of sentence, and to only those convicted of the enumerated felonies determined by the legislature to be offenses having the actual or potential danger of harm to other members of the general public. Under these circumstances, we find “a long history, a substantial consensus, and simply common sense” to be sufficient evidence for even a strict scrutiny review. [Citations omitted.]
Eberhardt, 145 So.3d at 385.
Because the 2012 amendment to Article I, Section 11 does not invalidate La. R.S. 14:95.1 as it applies to a felon no longer under State custody, the trial court did not abuse its discretion in denying the motion to quash the bill of information. Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 3

In the defendant’s third assignment of error, he argues that the prosecution in this case violated the constitutional prohibition against double jeopardy. The de *15 fendant contends that the State impermis-sibly charged him with violations of both La. R.S. 14:95.1 and 14:95(E) using the same evidence and witnesses.
The federal and state constitutions provide that no person may be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. I, § 15; see also La.Code Crim. P. art. 591. The | ^double jeopardy clause prevents the State from punishing a defendant multiple times for the same offense and prevents a second prosecution for an offense following an acquittal or conviction. State v. Letell, 2012-0180 (La.App. 1st Cir.10/25/12), 103 So.3d 1129, 1136, writ denied, 2012-2533 (La.4/26/13), 112 So.3d 838. Louisiana courts utilize either the federal “additional fact” test, see Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), or the somewhat broader “same evidence” test when evaluating double jeopardy claims.[6] See State v. Sandifer, 96-2226 (La.9/5/95), 679 So.2d 1324, 1329. Double jeopardy also incorporates a restriction known as “collateral estoppel.” See Ashe v. Swenson, 397 U.S. 436, 442-43, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); State v. Knowles, 392 So.2d 651, 655 (La.1980).
The defendant first contends that the prosecution in This case violated the doctrine of collateral estoppel, reasoning that a single issue of ultimate fact — his constructive possession of the firearm— was dispositive of both charges. However, the appellant misconstrues this doctrine; collateral estoppel “means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Ashe, 397 U.S. at 443, 90 S.Ct. 1189. Collateral estoppel forbids only the subsequent prosecution of a defendant for a crime which arises from the same facts resolved in an initial trial. Knowles, 392 So.2d at 658. The doctrine does not bar the prosecution of 11fimultiple offenses based on the same act or occurrence in one trial. Compare State v. Cain, 324 So.2d 830, 833-34 (La.1975).
Next, the defendant avers that the prosecution in this case violated the prohibition against double jeopardy under the “same evidence” test, reasoning that the same evidence regarding his alleged possession of a firearm was dispositive of both charges. The “same evidence” test focuses on the actual physical and testimonial evidence necessary to secure a conviction on the applicable charges. Sandifer, 679 So.2d at 1329. The test “depends upon the proof required to convict, not the evidence actually introduced at trial.” Id. A defendant may only be placed in jeopardy for one of two counts if the evidence required to support a finding of guilt of one count would also support a conviction for the other. Id.
In this case, the defendant was charged with and found guilty of being a convicted felon in possession of a firearm in violation of La. R.S. 14:95.1. The defendant was also charged with and found guilty of possession of a weapon while in possession of a controlled dangerous substance in violation of La. R.S. 14:95(E). To establish proof of *16 the defendant’s violation of La. R.S. 14:95.1, the State was required to prove that Zeno had been convicted of one of a number of certain enumerated felonies and was in possession of a firearm within ten years from the date of the completion of his punishment for such felony. Conversely, to establish proof of the defendant’s violation of La. R.S. 14:95(E), the State was required to prove Zeno possessed the firearm while in possession of a controlled dangerous substance.
Because the doctrine of collateral estop-pel is inapplicable to this case and because the evidence required to prove a violation of La. R.S. 14:95.1 would not also establish a violation of La. R.S. 14:95(E) (or vice versa), the 117prosecution did not violate the constitutional prohibition against double jeopardy.
The appellant’s third assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant alleges the trial court erred in denying his motion for new trial based on an improperly constituted petit jury. Specifically, he argues that juror Lawrence Green, III had three previous felony convictions, and that despite his counsel’s exercise of due diligence, this defect was not discovered prior to the verdict. As such, he avers that Mr. Green sat on the jury, participated in rendering the verdict against him, and that the trial court erred by denying his motion for new trial.
Louisiana Code of Criminal Procedure article 401(A)(5) provides as follows:
A. In order to qualify to serve as a juror, a person must:
⅜ * *
(5) Not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor.
Louisiana Code of Criminal Procedure article 851 provides the procedure for requesting a new trial when the defendant discovers after the verdict that a juror was unqualified. In pertinent part, article 851(4) provides as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on the motion of the defendant, shall grant a new trial whenever:
I * * *
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.[7]
Consequently, to take advantage of the defect and receive a new trial, the defendant must establish that he was not aware of the disqualification when the juror was accepted by him and that this information could not have been ascertained by due diligence. State v. Martin, 582 So.2d 306, 310 (La.App. 1st Cir.1991) (citing State v. Herrod, 412 So.2d 564, 566 (La.1982)), writ denied, 588 So.2d 113 (La. *17 1991). Courts generally have required that the defendant establish that he examined the juror, during voir dire, on the juror’s qualifications, and that the juror answered falsely, in order to show he exercised due diligence. Martin, 582 So.2d at 310; see also State v. Folse, 623 So.2d 59, 67 (La.App. 1st Cir.1993). Voir dire of prospective jurors is specifically designed to test their qualifications and competency; however, “the defense should not be permitted to sit by during voir dire examination and learn as little as possible about a prospective juror, and then, after an unfavorable verdict, discover or seek out a ground for disqualification and demand a new trial.” State v. Baxter, 357 So.2d 271, 274 (La.1978). However, if jurors have' already been sufficiently questioned by either the court or the prosecutor, concerning their qualifications, and their responses do not give any indication that further 113inquiry is required, then a defense attorney should not be required to repeat the questions. Martin, 582 So.2d at 311.
In the instant case, the juror in question, Lawrence Green, III, marked “no” after being asked in his juror questionnaire, “Have you ever been convicted of a felony?” Further, at the beginning of the voir dire examination, the trial court made opening remarks regarding juror qualifications. The court stated, “[y]ou must not be under an indictment for a felony nor have been convicted of a felony for which you have not been pardoned. Does anyone feel they do not comply with these qualifications?” Green remained silent.
Assuming, arguendo, that defense counsel exercised due diligence in determining and evaluating the jurors during voir dire,[8] we find that the trial court did not err by denying the motion for new trial because no prejudice was shown. The defendant was convicted by a unanimous jury, while only ten of the twelve jurors needed to concur to render a verdict. See La.Code Crim. P. art. 782(A). Even if Mr. Green was incapable of serving as a juror, the defendant received eleven guilty votes, enough to convict on both counts. As such, the trial court did not abuse its discretion in denying the defendant’s motion for new trial. See State v. Jones, 41,672 (La.App. 2nd Cir.1/14/09), 999 So.2d 1156, 1158-60, writ denied, 2009-0311 (La.11/6/09), 21 So.3d 297; State v. Neal, 550 So.2d 740, 744-45 (La.App. 2nd Cir.1989), writ denied, 556 So.2d 55 (La.1990).
This assignment of error is without merit.

19,ASSIGNMENT OF ERROR NO. 7

In his seventh assignment of error, the defendant contends the trial court erred in denying his motion to suppress.[9] Specifically, he argues the traffic stop initiated by Agents Champagne and Melancon created an unwarranted detention, and that his consent to search the vehicle was “inextricably linked” to this continued restraint.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from *18 use at the trial on the merits on the ground that it was unconstitutionally obtained. La.Code Crim. P. art. 703(A). A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 2001-0908 (La.App. 1st Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 2002-2989 (La.4/21/03), 841 So.2d 791. When a trial court denies a motion to suppress, factual' and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, ie., unless such ruling is not supported by the evidence. State v. Wesley, 2010-2066 (La.App. 1st Cir.9/14/11), 77 So.3d 55, 57-8, writ denied, 2011-2311 (La.9/21/12), 98 So.3d 322. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
Pursuant to the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer’s reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative. State v. Caples, 2005-2517 (La.App. 1st Cir.6/9/06), 938 So.2d 147, 154, writ denied, 2006-2466 (La.4/27/07), 955 So.2d 684.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, 2000-0356 (La.3/12/01), 780 So.2d 1053, 1056 (per curiam).
During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. La.Code Crim. P. art. 215.1(D).
Given the fact-intensive nature of the inquiry into whether a detention constitutes an investigatory stop, by its nature a brief encounter between the police and a citizen based on reasonable suspicion of criminal activity, or an arrest, an extended restraint on liberty which requires a greater showing of Improbable cause, courts have been unable to develop a bright-line test to determine when police-citizen encounters exceed the bounds of mere Terry stops. Because there is no scientifically precise formula that enables courts to distinguish between valid investigatory stops and other detentions that the law deems sufficiently coercive to require probable cause, a court assessing whether a detention is too long in duration to be justified as an investigative stop must examine “whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.” United *19 States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). A court making this assessment “should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.” Id.
Generally, a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. However, one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Brumfield, 2005-2500 (La.App. 1st Cir.9/20/06), 944 So.2d 588, 593, writ denied, 2007-0213 (La.9/28/07), 964 So.2d 353. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Aucoin, 613 So.2d 206, 208 (La.App. 1st Cir.1992). Informing a suspect of his right to refuse consent to a search is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of consent to a search. Furthermore, oral consent to search is sufficient; written consent is not required. State v. Parfait, 96-1814 (La.App. 1st Cir.5/9/97), 693 So.2d 1232, 1240, writ denied, 97-1347 (La.10/31/97), 703 So.2d 20. When the State seeks to rely upon consent to justify the lawfulness of a war-rantless search, it has the burden of proving that consent was given freely and voluntarily. State v. Owen, 453 So.2d 1202, 1206 (La.1984). Whether consent was voluntarily given is an issue of fact to be determined by the fact finder in light of the totality of the circumstances. The trier of fact may consider the credibility of witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. Aucoin, 613 So.2d at 208-09.
When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such a ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
In his reasons for denying the motion, the trial court found that the defendant granted consent to search his vehicle, which included the containers therein, and this consent negated the need for probable cause or exigent circumstances. Further, the traffic stop of the vehicle driven by the defendant was supported by probable cause to believe he had violated La. R.S. 32:104(B)[10]. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (“[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.”). Furthermore, before the defendant’s vehicle came |24to a complete stop, the passenger in the defendant’s vehicle turned and looked at the agents through the rear window, turned back around, and threw an unidentified object out of the front passenger window. Additionally, upon stopping the defendant’s vehicle, the *20 defendant, referring to his passenger, stated, “He doesn’t do any drugs, man.” The agents reasonably suspected criminal activity, and pursued their investigation of whether or not the defendant or his passenger were involved in such activity. Agent Champagne testified regarding the defendant’s actions which confirmed his suspicion of criminal activity:
I observed a bag that looked like a shaving kit under the driver’s seat and I asked [the defendant] who was the bag for and he said it was his. He proceeded to that spot of the vehicle and he sat down in the driver’s seat and grabbed the bag. Mr. Zeno then grabbed the bag and said, “I can’t go to jail. I got my gun and,” — I’m sorry. “I can’t get in trouble. I got my gun in the bag.”
The duration of the stop was not unreasonable and did not transform the encounter into a de facto arrest. The defendant then voluntarily consented to a search of the vehicle, which was heard by both Agent Champagne and Agent Melancon. During the consensual search, the weapon was found. Therefore, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 8 and 9 I PROCEDURAL ERROR

In the defendant’s eighth assignment of error, he contends that the trial court erred in its denial of his motion to reconsider sentence. In his ninth assignment of error, the defendant argues that the sentences imposed are unconstitutionally excessive and harsh. He challenges his sentence of fifteen years at hard labor for the violation of La. R.S. 14:95.1 and his sentence of ten years at hard labor for the violation of La. R.S. 14:95(E), running concurrently. The defendant contends that the trial court failed to | improperly consider his background, employment, familial status, or the facts of the case before imposing sentence. Procedural error renders consideration of these assignments of error moot.
Initially, we note that our review for error is pursuant to La.Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
The trial court did not wait twenty-four hours, or secure a waiver of this required period, after denying the defendant’s motions for new trial and for post-verdict judgment of. acquittal before imposing sentence. See La.Code Crim. P. art. 873.[11] In cases where the defendant either contests his sentence or complains of the absence of a twenty-four hour delay, the failure of the trial court to observe the delay or to obtain a waiver thereof generally requires the sentence to be vacated and the case to be remanded for resentencing. See State v. Augustine, 555 So.2d 1331, 1333-35 (La.1990). Here, the defendant avers that both of his sentences are excessive, and that the trial court erred by denying his motion to reconsider sentence.
The instant defendant challenges the non-mandatory sentence imposed by the trial court, the trial court’s failure to *21 comply with La.Code Crim. P. art. 873 cannot be considered harmless error; the sentence must be vacated and the case remanded for resentencing. See Augustine, 555 So.2d at 1333-35; see also State v. Williams, 2013-1822 (La.App. 1st Cir.6/6/14), 2014 WL 3843850, 2014 LEXIS 362 (unpublished); compare State v. Davis, 2013-2044 (La.App. 1st Cir.12/27/13), 2013 WL 7122539 (unpublished).
Therefore, we must vacate the defendant’s sentences on both counts and remand the case to the trial court for resen-tencing.
CONVICTIONS AFFIRMED; SENTENCES ON BOTH COUNTS VACATED; REMANDED FOR RESENTENC-ING ON BOTH COUNTS.

. The minutes reflect that on both counts, the jury's verdict was 11-1. Further, in the trial court’s denial of the defendant's motions for new trial and post-verdict judgment of acquittal, it notes the jury’s verdict was 11-1. However, the jury polling at trial reflects a unanimous verdict on both counts. "Since there is a discrepancy between the minutes and the transcript, the transcript must prevail.” State v. Lynch, 441 So.2d 732, 734 (La.1983).

. Notice was provided to the Attorney General, as required by Louisiana Revised Statutes 13:4448, advising that the constitutionality of La. R.S. 14:95.1 was being challenged in this appeal. The Attorney General declined his right to be heard in this matter, noting that a case was pending before the Louisiana Supreme Court which would resolve the constitutional challenge to La. R.S. 14:95.1. See State v. Eberhardt, 2013-2306 (La.7/1/14), 145 So.3d 377.

. Prior to the 2012 amendment, Article I, Section 11 of the Louisiana Constitution stated: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.”

. We note that the instant defendant was also charged with a violation of La. R.S. 14:95(E), but did not challenge its constitutionality on appeal.

. On April 9, 2012, the constitutional amendment was debated in the Louisiana Senate. During the debate, Senator Dan Claitor asked Senator Niel Riser, the amendment’s sponsor, to explain the amendment. Senator Riser stated that the purpose of the act was to reinforce the Second Amendment in Louisiana law, so that Louisiana would have the strongest Second Amendment law in the nation. Regarding the existing gun laws, Senator Riser further stated, “You need to be real clear that [this act] defines ... how laws are judged. So [we] roughly have close to forty gun laws right now and those laws will stay in effect.” Senator Riser further stated, "Any [weapon] law on the books right now is on the books [and] they are going to stay there.... You’ll have to follow the current statute[s].” Louisiana 2012 Reg. Session Senate Floor Debate, Committee Debate on Bill 303, http://senate.la.gov/sessioninfo/ Archivesl2012lrs.htm at 1:57 to 2:21; see also, Eberhardt, 145 So.3d at 384, n. 4; State v. Wiggins, 2013-0649 (La.App. 1st Cir.1/31/14), 139 So.3d 1, n. 5.

. The defendant does not claim a violation of the prohibition against double jeopardy under the "additional fact” test. Because La. R.S. 14:95.1 requires proof of an additional fact not relevant to La. R.S. 14:95(E), i.e., the defendant’s status as a felon, prosecution in this case was plainly permissible under the "additional fact” test, in which the prosecution of a defendant for violations' of multiple statutes arising out of the same operative facts or conduct is permissible provided each statutory violation requires proof of an additional fact. Sandifer, 679 So.2d at 1329.

. La.Code Crim. P. art. 855 provides that "a motion for a new trial based on ground (4) of Article 851 shall contain allegations of fact sworn to by the defendant or his counsel, showing: (1) [t]he specific nature of the error or defect complained of; and (2) [t]hat, notwithstanding the exercise of reasonable diligence by the defense, the error or defect was not discovered before or during the trial.” Based on the defendant's motion for new trial, it appears these pro forma requirements are satisfied.

. We note that during voir dire, the sole statement made by defense counsel to Mr. Green was as follows: "No. No guns at home. Okay. Any particular reason why? You just don’t have them?” Mr. Green responded, "I just don’t have them.” No further interaction occurred between Mr. Green and defense counsel. ,

. The defendant actually filed two pre-trial motions to suppress; one to suppress the physical evidence obtained during the traffic stop, and one to suppress the statements made by the defendant during the traffic stop. The defendant's argument in the instant appeal addresses the motion to suppress the physical evidence.

. La. R.S. 32:104(B) provides that “[wjhen-ever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.”

. Louisiana Code of Criminal Procedure article 873 does not explicitly require a twenty-four hour delay in sentencing after the denial of a motion for a post-verdict judgment of acquittal, as it does after the denial of a motion for new trial. However, this Court previously has applied the twenty-four hour delay required by article 873 to motions for a post-verdict judgment of acquittal. See State v. Coates, 2000-1013 (La.App. 1st Cir. 12/22/00), 774 So.2d 1223, 1226; State v. Jones, 97-2521 (La.App. 1st Cir.9/25/98), 720 So.2d 52, 53.