**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0590

STATE OF LOUISIANA

VERSUS

THOMAS HENRY LOGAN

Judgment Rendered: ___'JUL 2 0 2020___

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Livingston, State of Louisiana
Docket No. 32532

The Honorable Brenda Bedsole Ricks, Judge Presiding

* * * * *

| | |
|---|---|
| Scott M. Perrilloux | Attorneys for the State of Louisiana |
| District Attorney | |
| Zachary T. Daniels | |
| Brad Cascio | |
| David Guidry | |
| Jeff Hand | |
| Assistant District Attorneys | |
| Livingston, Louisiana | |
| | |
| Jane L. Beebe | Attorney for Defendant/Appellant, |
| New Orleans, Louisiana | Thomas Henry Logan |

* * * * *

BEFORE: WHIPPLE, C.J., GUIDRY AND BURRIS,[1] JJ.

---

[1]     The Honorable William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

Defendant, Thomas Henry Logan, was charged by bill of indictment with aggravated battery, a violation of Louisiana Revised Statute 14:34, and pled not guilty. After a trial by six-member jury, he was found guilty as charged. The trial court sentenced defendant to ten years imprisonment at hard labor. Defendant now appeals.[2] We affirm the conviction and, finding a sentencing error, vacate the sentence and remand for resentencing.

## FACTS

On June 11, 2015, defendant shot Joshua Eddards in the chest. The incident occurred at the home where defendant, who was sixty-four years old, lived with thirty-year-old Joshua, Joshua's wife, Jeannie, and Joshua's mother, Laurene Graham.[3] Laurene testified that around mid-day, while on her way home, she received a text message from defendant indicating that Joshua and Jeannie were fighting, but that there was "no need to rush" home. When she arrived home shortly thereafter, Joshua was outside changing the oil in his car and Jeannie was sitting in the front seat of the vehicle. Laurene asked them if they had been arguing, and they told her they had not. When she told them about the text message from defendant, Joshua said he had confronted defendant about putting superglue on an outdoor light switch and that defendant "went off on him." While Joshua was telling her this, Laurene saw defendant peer out of the kitchen door window then walk away.

Laurene went inside the house and saw defendant sitting on the couch in the living room. She testified that she made a lighthearted comment about defendant putting superglue on the light switch and defendant "blew up," and began yelling and cursing. She noticed defendant had a gun on his lap. Laurene testified that as

---

[2] Although defendant's motion for appeal was untimely filed, the State made no objection and the trial court ordered the out-of-time appeal; therefore, the merits of the appeal are properly considered. *See* Code Crim. Pro. arts. 914 and 930.8(A); *State v. S.J.I.*, 06-2649 (La. 6/22/07), 959 So. 2d 483.

[3] Throughout the record, Joshua's mother's name is spelled both "Laurene" and "Lorene."

she walked away to put down her bags, defendant said, "If you don't do something about Josh, I will."

Joshua then came inside the kitchen door and, according to Laurene, told defendant, "If you're going to holler at somebody, come holler at me. Quit hollering at my mom." Laurene testified defendant jumped up off the couch and "went into the kitchen with the gun raised up ready to shoot," while she screamed "Don't shoot my son." Defendant fired a shot that missed Joshua and hit a kitchen cabinet, which caused defendant to lose his balance. Laurene stated defendant then "stood straight up and took a step and shot" Joshua in the chest.

Laurene described turning to defendant and saying, "Tell me you didn't shoot my son," and defendant responding that Joshua hit him in the head or the face. Laurene testified that she had not seen Joshua anywhere near defendant and that she yelled at defendant to leave. She then ran to Joshua, who was having difficulty breathing. She testified that defendant told her "You might want to call 911, I just shot your son." When she again yelled for him to leave, defendant made his way outside. She called 911 and police responded within minutes.

Immediately upon their arrival, defendant told the responding deputies "I did it. I shot him in self-defense," and was taken into custody. The revolver defendant used was recovered where defendant said it would be found, with two spent and three unspent cartridges inside the gun. Deputies also observed a bullet hole in a cabinet door. A detective interviewed defendant later the same day, and though defendant stated that Joshua struck him in the face, the detective observed no marks or blood on defendant. Defendant's recorded statement was played for the jury.

Joshua survived and testified at trial that he and defendant had "a brief confrontation" earlier that day about the light switch. He described being outside when he heard defendant "violently" speaking to his mother, which caused him to fear for her safety. He opened the door and told defendant, "If you want to holler at

3

somebody, come holler at me." According to Joshua, defendant "immediately stood up from where he was seated and turned around and took maybe a step or so and fired" the first shot. Joshua explained he froze, thinking defendant was trying to scare him, or was angry about a previous argument. Joshua testified, "I froze and he just stepped another step over and moved the barstool out the way and squared up and just pulled the trigger. I mean, there wasn't a smile; there wasn't a frown. There wasn't any expression on his face other than just, I'm about to kill you, and he pulled the trigger." Joshua clarified that he was unarmed when defendant shot him.

The bullet struck Joshua's chest and grazed his heart membrane. Doctors told him it was a miracle he survived, and that he would have died if the bullet had gone a millimeter in either direction, or if the bullet had exited rather than lodging inside him. Joshua spent approximately five weeks in the hospital recovering, with almost four of them spent on life support. During that time, he contracted a staph infection and nearly died.

Defendant testified at trial in his own defense. He stated that earlier that day, Joshua "kind of scared [him] a bit." He explained that Joshua was sweaty, with "glassed over" eyes and slurred speech, and that Joshua "come over me -- hovering over me[,] swinging his arms like some kind of crazed nut." Defendant stated that when Laurene came inside, he told her he could not stay there "with all of the drugs and stuff going on." He explained, "All of a sudden, I'm talking to her, and all of a sudden Josh comes busting through the door, running through – almost running through the house saying, 'I'm going to straighten you out about talking behind my back about me.'"

Defendant stated he perceived Joshua's statement as a threat, took a defensive posture, and told Joshua not to come near him. Defendant said Joshua kept advancing, so he pulled his pistol from his pocket and shot a hole in the floor, which bounced and struck the cabinet. According to defendant, Joshua "grinned at [him]

4

like [an] opossum and said, 'You're not going to hurt me with that little gun,'" then knocked him to the floor. Defendant testified he allowed Joshua to hit him, explaining "if you take a defensive stance, you've got to let your enemy hit you first before you can retaliate." He then turned and shot at Joshua's stomach.

On cross-examination, the State pointed out that in his recorded statement to police, defendant alleged that Joshua only hit him once. Defendant explained the discrepancy between the statement and his trial testimony was due to "trauma." Defendant conceded that before that day, Joshua had never touched him, but had accosted him verbally. Defendant alleged he fired a "warning shot" first at the "drug infested" Joshua. Defendant claimed the reason law enforcement did not find any drugs in the house was due to them being able to "hide that paraphernalia real easily."

## SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first contends the evidence was insufficient to support the verdict. A conviction based on insufficient evidence cannot stand, as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The *Jackson* standard of review, incorporated in Louisiana Code of Criminal Procedure article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that, in order to convict, the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *State v. Dyson,* 16-1571 (La. App. 1 Cir. 6/2/17), 222 So. 3d 220, 228, *writ denied,* 17-1399 (La. 6/15/18), 257 So. 3d 685. When direct

5

evidence is viewed in a light most favorable to the prosecution, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Brothers*, 17-0870 (La. App. 1 Cir. 11/1/17), 233 So. 3d 110, 113, *writ denied*, 17-2160 (La. 10/8/18), 253 So. 3d 803.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. *State v. Cockerham*, 17-0535 (La. App. 1 Cir. 9/21/17), 231 So. 3d 698, 705, *writ denied*, 17-1802 (La. 6/15/18), 245 So. 3d 1035. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. The fact that the record contains evidence that conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. *State v. Moultrie*, 14-1535 (La. App. 1 Cir. 12/14/17), 234 So. 3d 142, 146, *writ denied,* 18-0134 (La. 12/3/18), 257 So. 3d 1252. Moreover, when there is conflicting witness testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Ruffen*, 18-1280 (La. App. 1 Cir. 2/28/19), 2019WL968412, *4, *writ denied*, 19-00564 (La. 9/6/19), 278 So. 3d 971.

Battery is defined, in pertinent part, as the intentional use of force or violence upon the person of another. La. R.S. 14:33. Aggravated battery is defined as a battery committed with a dangerous weapon. La. R.S. 14:34(A). Thus, aggravated battery consists of the intentional use of force or violence, with a dangerous weapon, upon the person of another. The crime requires neither the infliction of serious

6

bodily harm nor the intent to inflict serious injury. *State v. Howard*, 94-0023 (La. 6/3/94), 638 So. 2d 216, 217 (*per curiam*); *see also* La. R.S. 14:33 and 14:34(A).

The evidence adduced at trial, including defendant's own testimony, established defendant committed aggravated battery by shooting Joshua with a gun. On appeal, defendant does not contest shooting Joshua, instead arguing the evidence was insufficient to prove beyond a reasonable doubt that he did not act in self-defense. At trial, "self-defense" was referenced by witnesses, including the defendant. However, the legal issue of self-defense was not presented to the jury. Rather, in closing arguments, defense counsel argued the evidence proved second-degree battery, not aggravated battery, with no mention of self-defense. Further, the record contains no indication that defendant requested a jury instruction relative to self-defense and defendant made no objection to the jury instructions, which contained no such instruction. The *Jackson* standard does not provide a defendant with a means of splitting alternative and inconsistent defenses in different forums, raising one defense before the jury and when that fails, a second defense before an appellate court conducting sufficiency review. *State v. Juluke*, 98-0341 (La. 1/8/99), 725 So. 2d 1291, 1293 (*per curiam*); *see also* La. Code Crim. Pro. art. 841. The argument that defendant acted in self-defense is not properly before this court and will not be considered.

This assignment of error is without merit.

## SENTENCING ERROR

Pursuant to Louisiana Code of Criminal Procedure article 920, this court routinely conducts a review for errors discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After careful review of the record, we have found a sentencing error.

Unless expressly waived by the defendant, at least a twenty-four hour delay is required between the denial of a motion for post-verdict judgment of acquittal and

7

sentencing. *See* La. Code of Crim. Pro. art. 873; *State v. Zeno*, 14-0325 (La. App. 1 Cir. 9/19/14), 155 So. 3d 4, 20, n.11, *writ denied*, 14-2167 (La. 5/22/15), 170 So. 3d 983; *State v. Blackburn*, 09-0178 (La. App. 1 Cir. 6/12/09), 2009WL1655484, *4 (recognizing the requirement applies to oral motions). Where a defendant does not expressly waive the delay required by Article 873 and challenges his sentence on appeal, the sentence must be vacated and the matter must be remanded so a sentence can be legally imposed. *See State v. Augustine,* 555 So. 2d 1331, 1334 (La. 1990); *State v. Gardner,* 16-0192 (La. App. 1 Cir. 9/19/16), 204 So. 3d 265, 270.

The record reflects that the trial court sentenced defendant immediately after denying defendant's oral motion for post-verdict judgment of acquittal. The record does not reflect an express waiver by the defendant of the delay required by Article 873, and defendant has challenged his sentence on appeal. Since the sentence imposed was not a mandatory one, the sentence must be vacated and the matter remanded for a legally imposed sentence. *See State v. Nawadny*, 18-0428 (La. App. 1 Cir. 11/6/18), 2018WL5817282, *1. Consequently, defendant's assignment of error that challenges the sentence as excessive is moot.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**